R. E. DIETZ CO. v. BURR & STARKWEATHER CO.

(Circuit Court of Appeals, Second Circuit.   May 8, 1917.)

No. 239.

1. PATENTS ☞28—DESIGN PATENTS—ESSENTIALS TO VALIDITY.
   The rules for interpretation of design patents are not different from those applying to other patents, and to give validity to such a patent there must be originality and the exercise of the inventive faculty, and the design must also be pleasing and attractive to the eye.

2. PATENTS ☞28—DESIGN PATENTS—ESSENTIALS TO VALIDITY.
   It is immaterial that the subject of a design patent may embody a mechanical function, provided the design per se is pleasing, attractive, novel, useful, and the result of invention.

3. PATENTS ☞328—VALIDITY—DESIGN FOR LANTERN.
   The McArthur design patent, No. 42,488, for a design for a lantern, is void, as not showing a design which appeals to the æsthetic sense, and also for lack of invention.

4. PATENTS ☞328—INVENTION—TUBULAR LANTERNS.
   The Bergener patent, No. 962,114, and the Erb patent, No. 962,135, each for a tubular lantern having the tubes stiffened, respectively, by longitudinal and by transverse ribs or corrugations, held void for lack of invention.

Cross-Appeals from the District Court of the United States for the Western District of New York.

Suit in equity by the R. E. Dietz Company against the Burr & Starkweather Company.   From the decree, both parties appeal.   Modified on defendant's appeal.

For opinion below, see 236 Fed. 763.

The bill alleged infringement of design patent to McArthur, 42,488, and of two mechanical patents, viz. that to Bergener, No. 962,114 (claim 1), and to Erb, No. 962,135 (first and only claim).   The claims in suit are as follows:

Bergener: "1. A tubular lantern having tubes which are each composed of two substantially half-round half-tubes, stamped of sheet metal and secured together by seams on the inner and outer sides of the tubes, and each half-tube being formed between said seams with a hollow longitudinal rib thrown out on the half-round surface of the half-tube, substantially as set forth."

Erb: "A tubular lantern having tubes composed of stamped half-tubes of sheet metal which extend in a continuous piece from end to end and are provided between their ends at intervals with hollow transverse stiffening beads, said half-tubes being joined on opposite sides by overlapped seams, substantially as set forth."

The trial court dismissed the bill as to the design patent and sustained both of the mechanical patents.   Both parties appealed.

Wilhelm & Parker, of Buffalo, N. Y. (Arthur E. Parsons, of Syracuse, N. Y., and Karl E. Wilhelm, of Buffalo, N. Y., of counsel), for plaintiff.

Frederick F. Church and G. Willard Rich, both of Rochester, N. Y. (L. J. Whittemore, of Detroit, Mich., of counsel), for defendant.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above).   The patents in suit relate to making lanterns, and especially tubular lan-

terns. The word "lanthorn," and the fact that it is obsolete, sufficiently suggests the antiquity of lantern-making; while 26 years ago, in R. E. Dietz Co. v. C. T. Ham (C. C.) 47 Fed. 320, an action relating to improvements for tubular lanterns, it was noted that the "industry is crowded to repletion." In such an art McArthur's design patent appears, with specification, as follows:

"The accompanying drawing represents a perspective view of a tubular lantern embodying this design. The characteristic feature of this design consists of the upwardly contracted or downwardly flaring shape of the chimney A, which extends from the globe B to the top C of the lantern frame. I claim: The ornamental design for a tubular lantern as shown and described."

The drawing is shown below.

This record suggests two questions as to this patent : (1) Is the subject matter patentable as a design? (2) Is invention revealed?

It is established as matter of fact that the reasons for making lanterns in the shape exhibited by McArthur are not æsthetic, that ornamentation is not a purpose, nor does the style rest on a desire to please the eye. While some of these objects may be incidentally attained, the business or commercial reason for making McArthur's style of lantern is to reduce to a minimum the glass employed in lantern construction.

[1] The construction of design patents has often been considered in this court; always, we think, in consonance with the ruling cases— Gorham v. White, 14 Wall. 528, 20 L. Ed. 731, and Smith v. Whitman Saddle Co., 148 U. S. 674, 13 Sup. Ct. 768, 37 L. Ed. 606. To entitle an inventor to the benefit of a design patent there must be originality, the inventive faculty must be exercised, mere mechanical skill is not enough. Cary, etc., Co. v. Neal, 98 Fed. 617, 39 C. C. A. 189; Steffens v. Steiner, 232 Fed. 862, 147 C. C. A. 56. The test for invention is the same for design as for mechanical patents. Strause, etc., Co. v. Crane Co., 235 Fed. at 131, 148 C. C. A. 620. All design patents appeal to the eye; they must present something pleasing and attractive (Mygatt v. Schauffer Co., 191 Fed. 836, 112 C. C. A. 350), and relate to appearance and to matters of ornament. The utility of the patent depends on the effect upon the eye, not to any new function; and such appeal is to the æsthetic emotion. Rowe v. Blodgett, etc., Co., 112 Fed. 61, 50 C. C. A. 120. The object of the statute is to encourage the origina-

tion of objects "which give pleasure to the sense of sight." Mygatt v. Schaffer, 218 Fed. 831, 134 C. C. A. 515.

Mere change in construction, displaying no originality and no added beauty, cannot be the subject of a design patent. Mygatt v. Schaffer Co., supra. An applicant for a design patent formerly did no more than submit a picture or diagram of his design, but when a specification is filed with the drawing (as is now the practice), it must be construed together with the claim and drawing, as is the established rule in respect of other patents. The rules of interpretation are not different from those regulating other patents, and a design claim may (like any other) be restricted to the specific form shown. New York Belting Co. v. New Jersey, etc., Co., 53 Fed. 812, 4 C. C. A. 21; Ashley v. Tatum Co., 186 Fed. 339, 108 C. C. A. 539.

[2] While design patents are not intended to protect a mechanical function, or to secure to the patentee monopoly in any given mechanism or manufacture as such, it is immaterial that the subject of the design may embody a mechanical function, provided that the design per se is pleasing, attractive, novel, useful and the result of invention. Ashley v. Weeks, etc., Co., 220 Fed. at 901, 136 C. C. A. 465. But it is the design that is patented, not the mechanism dressed in the design.

[3] Applying these rules to the matter in hand, we are of opinion that McArthur's lantern, or any lantern looking like that of the design, does not appeal to the æsthetic sense, and represents nothing more than a convenient shape for an article always purchased and used for what it will do—not for its looks. We further believe, in the light of a long line of tubular lanterns, beginning with that of Irwin (patent 105,083, July 5, 1870), and continuing especially through Betts (patent 340,274, April 20, 1886), that nothing more than the skill of a mechanic was involved in shortening a glass globe and lengthening a metal chimney, and McArthur did no more. For these reasons the lantern shown discloses no invention, which forbids any patent, nor does it make any appeal to the eye, or the æsthetic sense, which forbids a design patent.

[4] The two mechanical patents are entitled as relating to "tubular lanterns." Bergener says his object is "to stiffen the tubular frame and to avoid imperfections in the shape of the tubes." Erb states as his object "to stiffen the tubes of the tubular frame in a simple, inexpensive, and effective manner." Bergener accomplishes his result by putting a longitudinal rib on each half-tube of the lantern frame, and says:

"These ribs serve not only to strengthen and stiffen the tube, but also to draw or stretch the sheet metal as it is being shaped between the dies, in stamping the half-tube out of a flat blank."

Erb's result is reached by making transverse ribs on each half-tube, and he asserts that:

These "ribs take up the surplus of metal in shaping the half-tubes from flat blanks between dies, and so draw the metal tight * * * and prevent buckling of the metal."

The quoted statements of the specifications, as explained by evidence, mean that a ribbed half-tube made from a flat blank can be more accurately joined to its fellow by the closing dies, than is the case with unribbed halves. It is stated in evidence, "by forming this rib it stiffened the metal in the center, and that prevented the metal from spreading." The same witness said there was no difference in kind, between the transverse and longitudinal ribs, but that in his opinion the short or transverse indentation was "the better of the two." Put into legal phrase, this means that it is a function or attribute of ribbed tube-blanks, to resist the distorting action of dies more successfully than does plain tubing.

If the fact is proven (which is doubtful), it is more doubtful whether it was invention to discover the function; for ribbing or corrugation of metal is confessedly old, and we fail to see that the ribs in question are doing any other work or performing any other function when in a closing die or other stamp, than ribs or corrugations have done ever since they were first used long before the dates of these patents—i. e., they strengthen the metal and assist in resisting strains or stresses of any and every kind.

But whether claims might have been drawn protecting what we regard as a mere function is immaterial, for the claims in suit cover nothing but lantern tubes presenting "hollow longitudinal ribs" (Bergener) and "transverse stiffening beads" (Erb). Under such claims as these, since ribbed lantern tubes per se are at least as old as the Orphy patent of 1888 (390,699), it is plainly impossible to protect what is at best a new use or newly observed virtue of an old device, viz. the corrugation or ribbing of metal. The claims cover nothing but a stiffener (in itself old) applied to the tubular form of lantern construction, which is also of itself old. Such claims are void for lack of invention.

The decree below is modified, and the cause remanded, with orders to dismiss the bill, with costs in both courts.