## ZIDELL v. DEXTER et al.

### (Circuit Court of Appeals, Ninth Circuit. January 5, 1920.)

### No. 3389.

1. PATENTS ⬦28—ASSEMBLING OLD ELEMENTS INTO SINGLE DESIGN CONSTITUTES INVENTION.

The fact that the elements of a design patent were old does not establish want of invention in assembling them.

2. PATENTS ⬦328—DESIGN PATENT FOR CHILDREN'S ROMPERS VALID.

The Zidell design patent, No. 52,720, for children's rompers, *held* valid and not infringed.

3. PATENTS ⬦252—DESIGN PATENT NOT INFRINGED BY DISTINGUISHABLE VARIATION OF ELEMENTS.

Where a design invention consists only of bringing together old elements with slight modifications of form, the invention is confined to those modifications, and a person using the same elements with his own variations of form does not infringe, if his design is reasonably distinguishable from the patented design.

4. PATENTS ⬦252—DESIGN PATENT FOR CHILDREN'S ROMPERS NOT INFRINGED.

Design patent for children's rompers *held* not infringed by various garments, each of which had some, but not all, of the elements contained in the patented design.

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; Oscar A. Trippet, Judge.

Patent infringement suit by William I. Zidell against Mrs. Billie Dexter, trading as the Billie Bumps Manufacturing Company, and Arthur Letts, trading as the Broadway Department Store. From that portion of the decree holding that certain garments did not infringe (259 Fed. 582), plaintiff appeals. Affirmed.

Frederick S. Lyon and Leonard S. Lyon, both of Los Angeles, Cal., for appellant.

William R. Litzenberg, of Los Angeles, for appellee Broadway Department Store.

Charles C. Montgomery and Victor R. McLucas, both of Los Angeles, Cal., for appellee Dexter.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge. The appellant brought suit for infringement of design patent 52,720, issued to the appellant on November 19, 1918, for "children's rompers." The court below held that the patent was valid, and that the defendant Letts had infringed by manufacturing and selling garments of the type described in the proceedings as Exhibit No. 6, but had not infringed in the making and selling of certain other types of garments, known in the record as Exhibits No. 4, No. 5, and No. 8. From that portion of the decree the appellant appeals.

[1] The patent was obtained without specifications or description other than drawings of the design, and it gives to the public no notice that any particular element or group of elements of the design is

---

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

predominant. On the face of the design the more prominent distinguishing features would appear to be (1) a square Dutch collar; (2) the ornamentation of collar, wrist bands and knee bands; (3) a belt with large buttons; and (4) the flaring or peg shape of the trousers. The prior art is shown by the Verdi patent, No. 1,255,491, issued October 15, 1917, for a "child's garment," in which is shown a square neck, short sleeves, flaring or peg-shaped skirts, and a belt, all in general resemblance to the appellant's design. Patent No. 47,447, issued to Georgene Averill June 15, 1915, presents a combination of short sleeves, belt, and peg-shaped trousers. Patent 51,674, issued to S. E. Davis January 8, 1918, for "child's one-piece outer garment," exhibits the general features of the appellant's design, with the single exception that the trousers are long and have not the peg shape. An advertisement in a Los Angeles daily paper of May 25, 1917, displays a picture of a one-piece child's garment called "Peggy Jeans," showing a square neck, short sleeves, sleeve cuffs, and belt, and an advertisement in a Los Angeles paper of June 5, 1917, shows a garment called "Klever Kiddie," with Dutch neck, short sleeves, with cuffs, and flaring trousers, with general peg effect. Other advertisements of the year 1917 display similar one-piece rompers with the Dutch neck, short sleeves, sleeve cuffs, belts, and short trousers, the latter full, but not peg-shaped.

It will thus be seen that there is nothing new in any of the features of the appellant's design. He but brought together elements that were old and well known. Single piece child's rompers with belts were old. Square Dutch collars, were old. Ornamental stitching was old. Peg-shaped trousers were old. The fact that the elements were old, however, does not prove want of invention in assembling them into a single design, and in view of the fact that the patent was granted, and that the design was favorably accepted by the public, we are not convinced that the court below was in error in sustaining the validity of the patent.

[2-4] In a design invention, which consists only of bringing together old elements with slight modifications of form, the invention consists only in those modifications, and another who uses the same elements with his own variations of form does not infringe, if his design is distinguishable by the ordinary observer from the patented design. This is the conclusion deducible from the leading case of Smith v. Whitman Saddle Co., 148 U. S. 674, 13 Sup. Ct. 768, 37 L. Ed. 606. And in cases where, as here, the elements of the design are all old, and the design is illustrated by drawings only, it has been held that in the absence of specifications the patentee who combines the old elements must be held substantially to the design which he exhibits by his drawing. In Ashley v. Samuel C. Tatum, 186 Fed. 339, 108 C. C. A. 539, it was held that in the absence of a specification calculated to secure to the patentee the predominant feature of his device, with or without ornamentation, the absence of ornamentation as shown in his drawing must be considered an essential element of the design, and it is not infringed by another design which shows such surface ornamentation. In R. E. Dietz Co. v. Burr & Starkweather, 243 Fed. 592,

156 C. C. A. 290, the court said that when a specification is filed with the drawing—

"it must be construed together with the claim and drawing, as is the established rule in respect of other patents. The rules of interpretation are not different from those regulating other patents, and a design claim may (like any other) be restricted to the specific form shown.

And in Ashley v. Weeks-Numan, 220 Fed. 899, 136 C. C. A. 465, the court said:

"The patentee having a patent with written specifications relating to an entirely new form of inkstand, he is entitled, not only to the exact design shown in his drawing of the patent, but also to the protection of the court against the making and marketing of inkstands which contain the dominant features of the design described in the specification."

As already shown, we have no means of knowing which, in the mind of the inventor, was the predominant feature of his design. It seems obvious that one purchaser might be attracted by the shape of the collar, another by the ornamentation stitched on the collar, cuffs, and knee bands, another by the belt with large buttons, and another by the flaring effect of the trousers. The garment known as No. 6 has all of the features of the patented design, excepting that the ornamental stitching is slightly different, and the collar, instead of being made square, is V-shaped. This the court held to be an infringement and the ruling in that respect is not challenged by appeal. Exhibit 4 differs from the patented design in that there is no ornamental stitching on the Dutch collar or cuffs, and no belt with buttons, and it is distinctly different in the shape of the trousers, which, instead of flaring midway, carry side pockets flaring at the top of the trouser legs. Exhibit No. 5 has all the features of the design patent, except that it is not a single piece garment and has no ornamental stitching, and has two front pockets stitched upon the trouser legs. Exhibit 8 is similar to Exhibit 4, except that it has buttons upon the belt.

We do not think that the court below erred in holding that these garments do not infringe. In determining the question of infringement, both the character of the design and the nature of the fabric to which it is applied are to be taken into account. The differences in designs, which under the patent law will avoid infringement, are differences which will attract the attention of the ordinary observer, giving such attention as the purchaser usually gives in buying articles of the kind in question and for the purposes for which they are intended. The evidence shows that at and prior to the conception of this design there were in use and on sale very many similar garments, with variations in design so slight as to leave to the ordinary observer the impression of a very general resemblance, and we must assume that to womankind, who are the purchasers in the main of this class of garment, these various coincident forms of garments were known, and whether such purchasers would be deceived into taking the garments which are alleged to infringe for a garment of the patented design would necessarily depend largely upon that general knowledge. There is no evidence that any purchaser has in fact been so misled.

The decree is affirmed.