---

### FARIS et al. v. PATSY FROK & ROMPER CO.

(Circuit Court of Appeals, Ninth Circuit. June 6, 1921.)

No. 3630.

1. **Patents** ⊜15—**Under present statute, design patent cannot be issued for mere outline.**

Under Rev. St. § 4929, as amended by Act May 9, 1902 (Comp. St. § 9475), authorizing design patent for any new, original and ornamental design, which omits the provision, found in earlier statutes, authorizing a patent for any new, useful, and original shape or configuration, no patent can be issued for a mere shape or outline of the design or pattern, unless such shape or outline is, in and of itself, an ornamental design.

2. **Patents** ⊜28—**Originality and beauty are essential to valid design patent.**

Patents for design were intended to encourage the decorative arts, and no patent can be issued for a design, unless it possesses both originality and beauty.

3. **Patents** ⊜328—**Design patent 54,809, for child's romper, held not to disclose invention.**

The Zidell patent, No. 54,809, for design for child's romper, *held* not to disclose invention, in view of the earlier patent issued to the same inventor for a design which embodied all the features of the patented design.

---

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. Patents ⚙28—Outline of figure previously patented, with ornamentatations, does not disclose invention.**

A design for a child's romper, consisting merely of an outline drawing, does not disclose invention over a previous design having the same outline, but embodying also additional ornamental features.

**5. Patents ⚙28—Different appearance of outline on filled-in figure does not show patentability of design.**

The rule that the test of the validity of a design patent is whether the design presents to the eye the same general appearance as the prior design does not apply where the latter design embodies the same outline as the earlier, but lacks ornamental features embodied in the earlier.

**6. Patents ⚙121—Cannot be issued for feature of previous design not claimed in specification.**

A patentee of a design cannot obtain a subsequent new patent for a design embodying features which were embodied in the original design, though not claimed therein; his remedy being by application for reissue of the original patent.

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; Oscar A. Trippet, Judge.

Suit for infringement of patent by the Patsy Frok & Romper Company against W. A. Faris and another, individually and as copartners trading under the firm name of the Fifth Street Store. Decree for plaintiff, and defendants appeal. Reversed, with directions to dismiss the bill.

See, also, Zidell v. Dexter, 262 Fed. 145.

This suit was brought for infringement of plaintiff's design letters patent No. 54,809, granted March 23, 1920, to William I. Zidell, pursuant to an application filed by him on July 14, 1919, assigned to plaintiff, Patsy Frok & Romper Company. The design is for a child's romper. The defendants in four other suits brought in the District Court of the United States for the Northern District of California by William I. Zidell, for infringement of the same patent, have petitioned this court for permission to be heard upon this appeal amici curiæ. Permission granted.

William R. Litzenberg and Lissner, Lewinsohn & Barnhill, all of Los Angeles, Cal., for appellants.

Frederick S. Lyon and Leonard S. Lyon, both of Los Angeles, Cal., for appellee.

Chas. E. Townsend, of San Francisco, Cal., for petitioners, as amicus curiæ.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). This appeal is before us upon the following stipulations, entered into by the parties:

"This appeal is taken by the defendants from said decree holding said design letters patent No. 54,809 valid, and it is hereby stipulated that the sole issue to be presented and determined upon this appeal is whether or not said design letters patent No. 54,809 are valid, in view of said design letters patent No. 52,720. For the purposes of appeal it is stipulated that said William I. Zidell produced and made a child's romper in accordance

with the drawing of patent No. 54,809, as distinguished from a child's romper conforming to the drawing of said patent No. 52,720, prior to the filing of his application for said patent No. 52,720."

The design of letters patent No. 54,809 is as follows:

Figure 1 is a front view of the child's romper. Figure 2 is a rear view of the same. In his application for patent No. 54,809, Zidell declared that he had "invented a new, original, and ornamental design for children's rompers, of which the following is a specification; reference being had to the accompanying drawing, forming part thereof." In the specification he claimed "the ornamental design for children's rompers as shown."

The design for letters patent No. 52,720 is as follows:

Figure 1 is a front view and Figure 2 is a rear view of the same. In his application for patent No. 52,720, Zidell declared that he had "invented a new, original, and ornamental design for children's rompers, of which the following is a specification; reference being had to

the accompanying drawing forming part thereof." In the specification he claimed "the ornamental design for children's rompers as shown."

It will be observed that the declarations and specifications for the two applications are identical, except in the drawings, to which references are made. The plaintiff contends that the only question to be determined is whether the design in patent No. 54,809 presented to the eye the same general appearance as the design in patent No. 52,720. If it does, it is conceded that patent No. 54,809 is invalid; but if, on the other hand, patent No. 54,809 does not present to the eye the same general appearance as patent No. 52,720, then it is contended that patent No. 54,809 is valid, and defendant has infringed.

The plaintiff finds support for this doctrine in the case of Gorham v. White, 14 Wall. 511, 20 L. Ed. 731. In that case Gorham & Co. had obtained a patent in July, 1861, for a new design in configuration and ornamentation for the handles of table spoons and forks under the name of the "Cottage Pattern." Defendant White had obtained two patents for designs, one in 1867, and another in 1868. These designs were also for the configurations and ornamentations on handles of forks and spoons. The statute under which these patents were obtained was section 11, Act of March 2, 1861 (12 Stat. 246-248). This statute was substantially a re-enactment of section 3 of the Act of August 29, 1842 (5 Stat. 543), the first statute of the United States on the subject. The Act of March 2, 1861, provides, among other things, that the Commissioner of Patents might grant a patent for any new and original design for a manufacture, or for any new and original impression or ornament to be placed on any article of manufacture, or for any new and useful pattern or print or picture to be either worked into or worked on or printed or painted or cast, or otherwise fixed on any article of manufacture, or for any new and original shape or configuration or any article of manufacture not owned or used by others before his, her, or their invention or production thereof, and prior to the time of his, her, or their application for a patent. It appears that the "Cottage" pattern of the Gorham & Co. design and the patterns of the White designs were all alike, the result of peculiarities of outline or configuration on the handles of the forks and spoons and of ornamentation thereon. The court, in discussing the provisions of the acts of Congress, said:

"The acts of Congress which authorize the grant of patents for designs were plainly intended to give encouragement to the decorative arts. They contemplate not so much utility as appearance, and that, not an abstract impression, or picture, but an aspect given to those objects mentioned in the acts. * * * And the thing invented or produced, for which a patent is given, is that which gives a peculiar or distinctive appearance to the manufacture, or article to which it may be applied, or to which it gives form."

The court proceeds:

"It is the appearance itself, therefore, no matter by what agency caused, that constitutes mainly, if not entirely, the contribution to the public which the law deems worthy of recompense. The appearance may be the result of peculiarity of configuration, or of ornament alone, or of both cojointly; but, in whatever way produced, it is the new thing, or product, which the patent law regards."

The court concludes with this statement:

"We hold, therefore, that if, in the eye of an ordinary observer, giving such attention as a purchaser, usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other."

It will be observed that the court held that:

"The appearance may be the result of peculiarity of configuration, or of ornament alone, or of both cojointly."

This was clearly within the scope of the statute of March 2, 1861, providing, as it did, that the invention might be "any new and original design for a manufacture" or "any new and original impression or ornament * * * to be placed on any article of manufacture, * * * or any new and useful pattern * * * to be either worked into or worked on * * * any article of manufacture, or any new and original shape or configuration of any article of manufacture." The designs of both the plaintiff and defendant were for the "configurations" of the spoon and fork handles and the "ornaments" placed thereon.

[1] The Act of March 2, 1861, was repealed by the Act of July 8, 1870 (16 Stat. 198–216), and in lieu of section 11 of the former act section 71 (page 209) of the later act was enacted. The word "useful" was introduced into this section of the statute by this act of 1870 to qualify "shape or configuration of any article of manufacture," and as thus amended resulted in section 4929 of the Revised Statutes of 1874; and this section, as amended by the Act of May 9, 1902 (32 Stat. pt. 1, p. 193), is the present statute under which this case is to be determined. It provides:

"Any person who has invented any new, original, and ornamental design for any article of manufacture * * * may * * * obtain a patent therefor."

In this statute no provision is made for the granting of a patent for "any new, useful, and original shape or configuration of any article of manufacture," or for any new and "original pattern," and we must conclude that no patent can now be issued for a mere shape, configuration, or outline of a design or pattern, unless such shape, configuration, or outline or pattern is in and of itself an ornamental design.

[2] We are dealing with the decorative art. As said by the Supreme Court in Gorham v. White, supra:

"The acts of Congress which authorize the grant of patents for designs were plainly intended to give encouragement to the decorative arts."

In Smith v. Whitman Saddle Co., 148 U. S. 674, 13 Sup. Ct. 768, 37 L. Ed. 606, the patent was dated September 24, 1878, and was for an improved design for saddles, issued under section 4929 of the Revised Statutes, as amended by the Act of July 8, 1870, providing protection for "any new, useful and original shape or configuration of any article of manufacture." The court refers to the fact that the word "useful" was not contained in the act under which the patent to Gorham & Co. was granted, and draws the conclusion that under section 4929, as so

amended, "where a new and original shape or configuration of any article of manufacture is claimed, its utility may be also an element for consideration." But, without stating what consideration was to be given to the word "useful" in a design patent, the court approved the language of Mr. Justice Brown, then District Judge for the Eastern District of Michigan, in Northrup v. Adams, 2 Ban. & A. 567, 568, Fed. Cas. No. 10,328, as follows:

"To entitle a party to the benefit of the act, in either case [mechanical inventions or designs], there must be originality and the exercise of the inventive faculty. In the one, there must be novelty and utility; in the other, originality and beauty."

In Rowe v. Blodgett & Clapp Co., 112 Fed. 61, 50 C. C. A. 120, the Circuit Court of Appeals for the Second Circuit, affirming the decision of the Circuit Court in the design patent for a horseshoe calk, also under the Act of July 8, 1870, adopted the language of the Circuit Judge in denying the patentability of the design. The court said:

"I decide this case upon the broader ground that patents for designs are intended to apply to matters of ornament, in which the utility depends upon the pleasing effect imparted to the eye, and not upon any new function. * * * Design patents refer to appearance, not utility. Their object is to encourage works of art and decoration which appeal to the eye, to the æsthetic emotions, to the beautiful. * * * The term 'useful,' in relation to designs, means adaptation to producing pleasant emotions. There must be 'originality and beauty. Mere mechanical skill is not sufficient.'"

We understand now the scope and purpose of the present statute. It is limited to the promotion of the decorative arts. In the production of a design within its scope "there must be originality and the exercise of the inventive faculty. * * * There must be originality and beauty. Mere mechanical skill is not sufficient." And these elements must be found in an invention of a "new, original, and ornamental design for an article of manufacture."

[3] Does the design shown in patent No. 54,809 come within the scope and purpose of this statute? What contribution has the patentee made to the decorative arts in its production? He has admittedly made nothing since he made the application for the original patent, No. 52,-720, on August 12, 1918. The stipulation provides:

"That said William I. Zidell produced and made a child's romper in accordance with the drawing of patent No. 54,809, as distinguished from a child's romper conforming to the drawing of said patent No. 52,720, prior to the filing of his application for said patent No. 52,720."

The stipulation might have gone further and provided:

"That the design in patent No. 54,809 is shown as the outline or configuration of the design shown in patent No. 52,720," as it there plainly appears.

How, then, can the plaintiff obtain a patent for a design already shown in the patent previously granted to him? The earlier patent embraces and distinctly shows everything shown in the later patent. When design patent No. 54,809 was issued, design patent No. 52,720 had been issued and published to the world, and all its elements had become part of the prior art 8 months before the second application was filed, and more than 16 months before the second design patent

was issued. The second design patent is for the bare pattern or single outline form or configuration of the design, exactly as shown in the first patent, with the shaded lines and hatchings eliminated, and without the ornamental stitching around the neck, sleeve, and leg bands. The first patent was issued for a term of 7 years; the second patent was issued for a term of 14 years. When the first patent expires, November 19, 1925, the original ornamental design for the garment there described should become public property under the statute. But will this be so if the second patent is held valid for the outline design of the first patent?

Had Zidell obtained a reissue of his first patent with the outline of that design a dominant feature, a different question would have been presented. The expiration of that patent would then have released all its elements from monopoly at the same time; but under the terms of the second patent, if valid, it will still have more than 8 years to run. Can the public then make use of the design of the expired patent without infringing the design of the second patent? Will it be possible to make use of the ornamental design of the first patent when it expires, without at the same time making use of the essential single outline element of the second unexpired patent?

Patent No. 52,720 was before this court in Zidell v. Dexter, 262 Fed. 145, where the patent was held valid. Judge Gilbert, speaking for the court, said:

"The patent was obtained without specifications or description, other than drawings of the design, and it gives to the public no notice that any particular element or group of elements of the design is predominant. On the face of the design the more prominent distinguishing features would appear to be: (1) A square Dutch collar; (2) the ornamentation of collar, wrist bands, and knee bands; (3) a belt with large buttons; and (4) the flaring or peg shape of the trousers."

In other words, it was an indivisible design. Comparing these elements of the design with the prior art, the court found that there was nothing new in any of the features of the design. Elements had been brought together which were old and well-known. "Single piece child's rompers with belts were old. Square Dutch collars were old. Ornamental stitching was old. Peg-shaped trousers were old." But the court held that the fact that the elements were old did not prove want of invention in assembling them into a single design; that—

"the differences in designs, which under the patent law will avoid infringement, are differences which will attract the attention of the ordinary observer, giving such attention as the purchaser usually gives in buying articles of the kind in question and for the purposes for which they are intended."

Patent No. 54,809, like patent No. 52,720, "was patented without specifications or description, other than drawing of the design, and it gives to the public no notice that any particular element or group of elements of the design is predominant." If we look now at the design for the purpose of ascertaining its distinguishing features, we find that it is essentially an outline or configuration of the same features we find in patent No. 52,720, namely: (1) A square Dutch collar; (2) wrist bands and knee bands; (3) a belt with buttons; (4) the flare or peg

shape of the trousers. If we give to this outline or configuration the substance of form in the ornamental shape of a garment for a child's romper, as called for by the patent and required by the statute, we plainly have the same garment design we have in patent No. 52,720. In other words, we cannot take the mere outline or configuration of a garment drawn on paper, and eliminate the cloth body distinguishing it in design from the garment, and call the outline an invention over the prior design for the garment with identically the same outline.

[4] The inspection of the original design reveals the further fact that there is in our opinion no originality or invention in the design of the second patent, when compared with the design of the first patent. It requires no inventive faculty to draw the outline of a figure already produced in interstitial form.

[5] It follows that we cannot take the appearance of a design, as shown by an outline drawing on paper, and make it the controlling test in a controversy such as we have in this case. The outline drawing of the second patent was the configuration or outline of the first patent. It was determined by this court in Zidell v. Dexter, supra, that the invention of the first patent was the "ornamental stitching around the neck, sleeve, and leg bands" worked on or into the configuration of the romper. The outline or configuration was either not claimed as invention in that case, or, if claimed, was denied by the court.

[6] But plaintiff claims that the outline design of the first patent was not dedicated to the public, but has been claimed by Zidell in the second patent; and as the application for that patent was made within two years of the first use or sale of a garment of that design, the patent is valid. But rule 92 of the Rules of Practice of the United States Patent Office provides as follows:

"Matters shown and described in an unexpired patent, which is an indivisible part of the invention claimed therein, but which was not claimed by reason of a defect or insufficiency in the specification arising from inadvertence, accident, or mistake, and without fraud or deceptive intent, cannot be subsequently claimed by the patentee in a separate patent, but only in a reissue of the original patent."

This rule is in accordance with the long-established law of patents. In James v. Campbell, 104 U. S. 356, 382 (26 L. Ed. 786), the Supreme Court said:

"It is hardly necessary to remark that the patentee could not include in a subsequent patent any invention embraced or described in a prior one granted to himself"—cited in Miller v. Eagle Manufacturing Co., 151 U. S. 186, 197, 14 Sup. Ct. 310, 38 L. Ed. 121.

In Ashley v. Tatum Co., 186 Fed. 339, 108 C. C. A. 539, the plaintiff's patent was for a design for a glass inkstand. The patent contained no written description, because the Patent Office at that time refused to allow any description to be filed. The drawing showed an inkstand with a low, square base, surmounted by a low dome, of a diameter somewhat less than the side of the base; the entire surface being plain, and without any applied ornamentation. The absence of such ornamentation was considered by the court as an essential ele-

ment of the design, and was not infringed by the defendant's design, which showed such surface ornamentation. After this decision an application was made to the Patent Office for a reissue, which was granted.

In Ashley v. Tatum Co. (D. C.) 240 Fed. 979, the suit was for an infringement of the same design as reissued. In the reissue the specifications set forth that the essential feature of the design consisted in the general outline of the stand, which comprised a low, broad, flat base, surmounted by a low dome, in which a funnel-shape dip cut was located. This design was claimed as ornamental. The defendant's design used plaintiff's outline design as a basis upon which ornamentation was superimposed, and of such a different appearance as to be readily distinguishable by a casual observer from plaintiff's design. It was held that the plaintiff's patent was valid and infringed, but that the suit could not be maintained against the defendant because of its intervening rights, and the bill was accordingly dismissed.

The plaintiff in the present case claims that this decision is authority supporting the validity of the second patent in this case; but it is clearly not applicable, unless we say that it is authority for the contrary view. It may be that Zidell could have obtained a reissue of the patent covering the outline of the design for the unexpired term of the original patent, as was done in Ashley v. Tatum Co., supra, upon a showing that Zidell's failure to claim the outline of the design in the original application for a patent was by reason of mistake or inadvertence; but that was not done, and we are not called upon to determine that question.

We are of the opinion that patent No. 54,809 is invalid. The decree of the District Court is reversed, with directions to dismiss the bill of complaint.

ROSS, Circuit Judge (concurring). I concur in the result. It seems to me that the second patent, numbered 54,809, was issued for precisely the same combination of old elements for which the first patent, numbered 52,720, was issued, and which first patent was sustained by this court when presented in the case of Zidell v. Dexter et al., 262 Fed. 145. It is true that the design disclosed in the first patent is much more elaborate in configuration than that of the second, but the prominent distinguishing lines are identical, and to ordinary observers would, I think, clearly present to the eye the same picture and to the mind the same idea. As a matter of course, two patents for the same invention are unauthorized.