## ELOESSER–HEYNEMANN CO. v. BAYLY–UNDERHILL MFG. CO.

District Court, D. Colorado. November 13, 1928.

No. 8046.

Bardwell, McComb & Strong, of Denver, Colo., for plaintiff.

A. J. O'Brien, of Denver, Colo., for defendant.

McDERMOTT, District Judge. The plaintiff holds a patent for an ornamental design for children's rompers (No. 56,450—October 26, 1920). There is no detail in the specification. The action is for infringement; the defenses the usual ones of nonpatentability, anticipation, and noninfringement.

The plaintiff's patent is succinctly described by the Court of Appeals of the Ninth Circuit as follows:

"The design patent involved, as illustrated, contains no written description; but the drawings show a front and rear view of a garment with a Dutch square neck, short sleeves, simulation of a belt below the armpits, long-legged trousers, peg top on trousers, patch pockets, and high waist line. From the rear view, buttons appear on the belt feature and back of the waist. The waist is an extension of the trouser portion of the rompers. There is some ornamentation along the neck opening and at the ends of the sleeves." Eloesser-Heynemann Co. v. Kuh Bros. (C. C. A.) 297 F. 831.

Prior to April, 1925, the defendant's garment differed from the plaintiff's in that the neck was round instead of square; there was a slight difference in the amount of flare, and some immaterial differences in seams and stitching. After a notice to desist, the defendant changed its garment in April, 1925, by lowering the pockets and concealing the buttons in the back. The questions involved have been carefully briefed, and the case comes on for decision.

I find no difficulty in reaching the conclusion that, if the plaintiff's patent is valid, the defendant has infringed, both before and since the change made in the garment in April of 1925. The test as to infringement of a design patent has been many times stated; the last expression by our court being in the language of Judge Lewis in the case of Grand Rapids Show Case Co. v. Measuregraph Co. (C. C. A.) 28 F.(2d) 497, decided September 14, 1928, where the court stated that " * * * there can be no infringement when the appearance of the two to the eye of an ordinary observer is not the same and does not arouse the same pleasing sensation, Gorham Mfg. Co. v. White, 14 Wall. 511, 20 L. Ed. 731; Kruttschnitt v. Simmons (C. C.) 118 F. 851; R. E. Dietz Co. v. Burr & Starkweather Co. (C. C. A.) 243 F. 592. No ordinary observer who desired to purchase and who had seen appellee's housed machine would be deceived into purchasing appellant's

by any similarity of appearance to him of the housings."

While it may not be altogether easy for a court to place itself in the position of a mythical ordinary observer, any more than it is to place itself in the shoes of a mythical "reasonable man," it is still a duty that must be performed, with such aid as may be had from the evidence. In this case there have been introduced in evidence a large number of garments made by the plaintiff and the defendant, both before and after the change in April of 1925, and photographs of the same, both draped on a child and undraped. With these garments and photographs on a table, the court has found it necessary to refer to the testimony and to mark the photographs on the back, in order that he might be sure that he is not confused in the exhibits. It is quite true that, as the study of this case progressed, with its increasing familiarity with the garments, it became less and less necessary to refer to the notation made on the back of the photograph. After such familiarity, the garments could be distinguished by the difference in the neck, one being square and one being round; by the difference in gathers which appear in the plaintiff's garment and not the defendant's; by the presence of the buttons in the back on the plaintiff's which do not appear in the defendant's; and by a slightly different location and shape of the pockets. An exhibit has been introduced in evidence showing an almost infinitesimal difference in the outline of the garments, and attention has also been pointed out to certain differences in the seams which can be detected without the aid of a microscope. Giving full weight to all of these differences, however, I am entirely persuaded that the ordinary housewife, seeking to buy the plaintiff's garment, could be, and would be, deceived by the defendant's garment.

The defendant argues that, by virtue of the decision in the case of Zidell v. Dexter (D. C.) 259 F. 582, and the letter of the solicitors for the plaintiff to the patent office, the plaintiff's patent is so limited that its only essential features are: (a) A square neck; (b) short kimono sleeves; (c) flaring hips; and (d) waist buttoned with large buttons. It is therefore argued that, since the defendant's garment has a round neck, and does not have the large buttons, there is no infringement. Attention might also have been called to the difference in pockets, and, what is probably the most striking difference of all, the lack of gathers in the defendant's garment. These things have been considered, but the test still remains of whether or not

there is such similarity in the garments as to deceive the ordinary member of the buying public. The conclusion reached does not, in my opinion, conflict with the decision of the Ninth Circuit in the case of Eloesser-Heynemann Co. v. Kuh Bros. (C. C. A.) 297 F. 831. The two garments there involved do not have anything like the same striking similarity as the garments here involved; in fact, the differences between the plaintiff's and defendant's garments are such as to lead one to the conclusion that the changes in the garments were not made in an effort to distinguish, but rather in an effort to simulate. Plaintiff's Exhibits 1 and 5 are attached to this opinion; Exhibit 1 being defendant's garment after the change was made, and Exhibit 5 being plaintiff's garment.

This leaves for determination the question of the validity of plaintiff's patent. The outline of plaintiff's garment is not patentable. The general appearance of the garment immediately suggests wooden shoes, the Isle of Marken, Volendam, and the paintings of Franz Hal. While the Dutch garments differed somewhat, the first impression of plaintiff's garment is that it is an adaptation, exaggerated, it is true, of the Hollandese costume. Design patent to Zidell (52,720—November 19, 1918) covered a child's romper of the same general style, with square neck, short sleeves, high waist, and a wide flare at the hips, with ornamental belt and other features. A later patent to Zidell (54,809), covering the outline without the ornamentation, was held void by the Ninth Circuit Court of Appeals, because a mere outline is not patentable, unless it is of itself an ornamental design, Faris v. Patsy Frok & Romper Co. (C. C. A.) 273 F. 900. A patent to S. E. Davis (51,674—January 8, 1918) covered a one-piece children's outer garment, with square neck, short sleeves, long legs, and a belt, without the distinctive flare at the hips. What, then, have we left?

(1) Long legs which are not in Zidell, but are in Davis.

(2) Buttons on back of the belt only, while in Zidell buttons appear both fore and aft.

(3) Patch pockets of ornamental design below the belt.

(4) Other slight differences in ornamentation.

As a matter of fact, if you add the long leg effect of the Davis patent to the Zidell patent, take off the ornamental belt buttons in front, and put on patch pockets, you have the plaintiff's design, with perhaps a little more flare at the hips. The Zidell patent ap-

pears to be most suitable for a child still wearing diapers; the plaintiff's patent is the same garment for an older child. The Zidell, Davis, and plaintiff's designs are shown:

### W. I. ZIDELL, CHILDREN'S ROMPERS.

### S. E. DAVIS, CHILDREN'S ONE PIECE OUTER GARMENT.

### J. MILLER AND D. MACOWSKY, CHILD'S ROMPER.

I cannot believe that such slight changes in design are patentable. I can see no ingenuity involved; and, if patentable, the patent could be avoided by such trifling differences in ornamentation as to make the grant valueless. A design patent must involve the inventive faculty; mere mechanical skill is not enough; "there must be something akin to genius—an effort of the brain as well as the hand." Smith v. Whitman Saddle Co., 148 U. S. 674, 13 S. Ct. 768, 37 L. Ed. 606. Some time prior to plaintiff's patent, and probably as a result of the economies of the war, one-piece "coverall" play garments for children came into vogue, as indicated by the Davis patent. To make such garments attractive as well as useful was a desirable achievement. But I cannot see that the adaptation of the picturesque costume of the Holland children of centuries gone to the

coverall of to-day involves any inventive genius. If it is thought otherwise, then Zidell had theretofore made the adaptation, and the plaintiff, by lengthening the legs, putting in pockets, and taking off ornamental buttons, simply adapted Zidell to older children, and was not called upon to employ inventive genius.

The District Court of the Northern District of California came to the same conclusion as to this patent. On appeal, the Circuit Court affirmed the decree upon the ground of noninfringement; the appellate court distinctly declining to pass upon the validity of the patent. Eloesser-Heynemann Co. v. Kuh Bros. (C. C. A.) 297 F. 831. The decision of the District Court is therefore not an adjudication (Russell v. Russell [C. C.] 129 F. 434), but the reasoning of the learned trial court, not disapproved on appeal, is of help. The decision is unreported, but Judge Bourquin said, in part:

"There is no doubt of the oddity, quaintness and simple artistic merit of plaintiff's design, nor of the utility (sometimes of account even in design patents), attractiveness, popularity, and wide use of its garment. In both, however, there is none of the patentee's genius of invention or artistry, but only the trade instinct of the manufacturer and salesman. For between plaintiff's design and garment and those of the illustrations of 'The Dutch Twins,' there is no substantial difference.

"In appearance and impression they are alike, are one design, of which either patented, the other would anticipate or infringe. It follows that by reason of this anticipation, publication and lack of invention, plaintiff's patent is invalid."

The plaintiff's combination of the two ideas of the Zidell and Davis patents brings the case very close to the decision of the Supreme Court in the Whitman Saddle Case, supra, where the court said:

"Nothing more was done in this instance (except as hereafter noted) than to put the two halves of these saddles together in the exercise of the ordinary skill of workmen of the trade, and in the way and manner ordinarily done. The presence or the absence of the central open slot was not material, and we do not think that the addition of a known cantle to a known saddle, in view of the fact that such use of the cantle was common, in itself involved genius or invention, or produced a patentable design."

The case of King Ventilating Co. v. St. James Ventilating Co., 26 F.(2d) 357, recently decided by the Court of Appeals of

this circuit, is controlling in many important features of the case at bar. A design patent for a ventilator was adjudged invalid. It was there held that a difference in amount of flare, or other differences in dimension, would not avoid anticipation; that the exercise of inventive faculty was as essential to a design patent as to a mechanical patent; that the combination of an old flared base to an old superstructure was not invention; that popularity and successful sales are not enough to sustain a patent. The facts presented by that opinion are perhaps not as difficult as those here presented, but the principles are sound and controlling, and lead me to the conclusion that no inventive genius was required, in the creation of plaintiff's design.

The same presumption of validity, arising from the grant, applies to design patents, as to others, as well as the presumption arising from public favor; and the burden is strongly upon the defendant, who attacks the validity of a patent. The presumption from the grant may be strengthened or weakened by an examination of the proceedings in the Patent Office. International Book Co. v. Young & Selden Co. (4th C. C. A.) 284 F. 831; Westinghouse Co. v. Toledo Ry. Co. (6th C. C. A.) 172 F. 371; Elliott v. Youngstown Car Mfg. Co. (3d C. C. A.) 181 F. 345. The file wrapper in this case discloses that the application was rejected on the citation of the first Zidell patent (52,720). The applicant then directed the examiner's attention to the fact that the Patent Office had granted a second patent to Zidell (54,809), which was closer in design to the first Zidell patent than the design plaintiffs wanted to patent, but which was applied for subsequent to plaintiff's application. The plaintiff's patent was then allowed. After that, the second Zidell patent was held void by the Ninth Circuit Court of Appeals. Faris v. Patsy Frok & Romper Co., 273 F. 900. It seems a fair conclusion that, if the Patent Office had had the benefit of this decision when plaintiff's application was pending, it would not have yielded to an argument predicated upon a void grant.

However, giving full effect to all presumptions, a duty still rests upon the courts. If, having heard all the evidence, any reasonable doubt exists as to the validity of a patent, it should be sustained. But if, at the end, no such doubt exists, the responsibility cast by the law upon the courts cannot be shifted to presumption. Warren Co. v. Rosenblatt (7th C. C. A.) 80 F. 540. Finding myself in that situation, the plaintiff's patent must be held to be void, and a decree entered dismissing the bill.