## GENERAL ELECTRIC CO. v. PARR ELECTRIC CO., Inc. *
### No. 358.

Circuit Court of Appeals, Second Circuit.

July 5, 1938.

Stephen H. Philbin, of New York City (Harrison F. Lyman and Edgar H. Kent, both of Boston, Mass., of counsel), for appellant.

Lawrence C. Kingsland and Edmund C. Rogers, both of St. Louis, Mo., and Pennie, Davis, Marvin & Edmonds, of New York.

*Judgment affirmed on reargument — F.2d —.

City (Estill E. Ezell, of St. Louis, Mo., of counsel), for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

This suit is for infringement of the Upson patent No. 1,957,237 granted May 1, 1934, for a fan blade and a design patent to Gosling No. 89,076 granted January 24, 1935 for an electric fan.

Claim 7 of the Upson patent is sued on. It reads: "In a fan, a plurality of blades each having a leading edge and a trailing edge and a surface of gradually increasing pitch from the leading edge to the trailing edge of the blade, the combined area of the blades being at least substantially equal to the disc area of the fan."

In this patent, the patentee states that the object of his invention is to provide improved blades for fans which will make them comparatively quiet in operation and yet make them comparable in the velocity imparted to the air, the velocity distribution, and the efficiency of operation with standard fans. The drawings of this patent show a fan of three blades, but the specifications refer to three or more. Appellant's commercial fan as well as appellee's has four blades. The specification discloses that to reduce the noise of the fan, the purpose of the invention, the blades occupy substantially the full disc area of the fan. The controlling end of one blade shields the leading end of the following blade which assists in reducing the noise of the entrance of the air into the fan. The overlapping blades also make it certain that the maximum disc area of the fan is being utilized. Furthermore, the specifications say that by thus utilizing the full disc area of the fan, it is possible to reduce the diameter of the fan and at the same time move a large quantity of air. This reduction is important in noise reduction because it reduces the peripheral velocity of the tip of the blades. It is pointed out that "the high peripheral velocity of the tip is the source of much of the noise of many fans".

Appellant's expert made tests as between narrow bladed fans and fewer wide blades which occupy the full disc area and demonstrated noise reduction by the use of the latter. Dr. Peters explained that the flow of air through the blades in wide bladed fans and in narrow bladed fans, respectively, is that of proven superiority of the wide bladed fan in the matter of quietness of operation. This is due to the fact that in a narrow bladed fan, such as was used in the past, a phenomenon technically known as "separation" of flow occurs in the air passing over the blades of the fan; that this separation is the main cause of noise in fan operation. In the wide bladed fan, the phenomenon of separation does not occur to a significant extent. He says that when wide blades are used, the angle of attack of the air on the rotating blades is a small angle whereas, with the use of narrow blades, the angle of attack is relatively large. A large angle of attack results in a separation which causes the noise. By "separation" is meant the flow which is illustrated in the exhibits. When the flow is smooth, the air in passing an obstacle closely hugs the contour of the obstacle, and when there is a separation, the air stream divides as it passes the obstacle, creating areas of different velocity and pressure. Appellant's experts substantially agree with this as the reason for the elimination of noise.

When the appellant placed its four bladed fan on the market, it at once met with commercial success. Appellee thereafter put on its infringing fan, the "Linberg", and it too met with success.

The appellee's fan operated with marked quietness due to the wide blades. The smoke tests made by Dr. Peters show that in the infringing fans, the wide blades avoid the separation of air which produces noise in the narrow bladed fans.

The appellee in its catalogue for the year 1935, when it put the Linberg fan on the market, advertised "a special blade" which throws a more penetrating breeze than any theretofore and the "whir of the blades is hardly perceptible" and further as giving "greater air delivery and a more penetrating breeze with practically silent operation". The combined area of fan admittedly has "a surface of gradual increasing pitch from the leading edge to the trailing edge of the blade". The Linberg type of fan infringes Claim 7.

Fans of the prior art are referred to as anticipatory of this patent. They are said to have "a gradual increasing pitch from leading edge to trailing edge". The Carlson patent No. 1,370,384 and the Breezo ventilating fan are referred to as the nearest of the prior art and alone will be considered. It is said that either of these could be made over into the construction of Claim 7 by changing the number of narrow

blades to fill the disc area or by widening the blades to fill the disc area and that such a change would be an obvious thing to do.

The Breezo fan appeared in 1924. It is an exhaust fan; a nine-bladed fan and does not respond to Claim 7. Its performance, as testified to, demonstrated it was not a quiet running fan. It is for any chosen average air velocity, about four or five decibels greater than the noise made by either appellant's or appellee's fan and the testimony shows that three decibels means a doubling of the noise intensity. Breezo does not make use of the idea of wide blades occupying full disc area. Instead of using a few wide blades it used nine and, as stated, the amount of noise produced by a fan increases with the number of blades. Moreover, the Breezo blades do not employ the surface of "gradually increasing pitch from the leading edge to the trailing edge of the blade". Breezo is a narrow blade and as compared with either appellant's or appellee's has a steep slope, that is, a steep increase in pitch. It does not anticipate the Upson invention.

The Carlson patent describes a fan capable of general use, but particularly designed for a turbine blower. It has five blades which are described as of unusual width, being substantially equal in length and breadth, and these fill substantially two-thirds of the circumference of the fan at their outer edges. Unlike the appellant's and appellee's blades, they are different in shape and are substantially equal in length and breadth. This patent was not directed to the noise problem, for noise was immaterial to a turbine blower, that is, a blower which is to be driven by a steam turbine. Carlson did not anticipate the claim here in suit because it contains no suggestion which would aid a fan designer in dealing with the noise problem. Its blades do not occupy substantially the full disc area as required by the claim.

The patent in suit teaches that the amount of noise increases with the use of the increased number of blades and that blades which use or occupy the full disc area reduce noise. The patent is based upon the principle of a few wide blades with a gradual increasing pitch from the leading edge to the trailing edge of the blade. This has accomplished a new result and we think amounts to invention.

 The Gosling patent shows a design which combines wide blades of special shape with the bullet-shaped nose or hub to produce an alleged new attractive design for an electric fan. Under it, the Silver Swan design of appellee is accused of infringement. The accusation is based on similarity of the bullet nose and the wide overlapping blades. The claim reads "the ornamental design for an electric fan as shown". The wide blades of the Upson patent are borrowed for this design. It required no inventive thought to employ the wide blades of Upson and to take the bullet shaped hub from the Noble patent No. 40,570 and draw a design of the combination. There was no inventive thought disclosed in this design. Dietz Co. v. Burr & Starkweather Co., 2 Cir., 243 F. 592; Strause Gas Iron Co. v. Wm. M. Crane Co., 2 Cir., 235 F. 126. An artisan with the Noble and Upson patents before him could put the wide blades of the latter on the tapered hub of the former. This patent must be held invalid.

The decree will be modified holding the Upson patent valid and infringed and the Gosling patent invalid.

Decree modified.