**AMERICAN FABRICS CO. v. RICHMOND LACE WORKS et al.**

Circuit Court of Appeals, Second Circuit. February 6, 1928.

No. 152.

**1. Patents ⚖═28—Reassembling or regrouping of familiar forms and decorations, to make design of originality and beauty, may be patentable.**

Reassembling or regrouping of familiar forms and decorations may constitute a patentable design, if the result be a design of originality and beauty.

**2. Patents ⚖═252—Infringement of design depends on whether two designs have substantially same effect on eye of ordinary observer, giving usual attention of purchasers.**

The test of infringement of a design is whether the two designs have substantially the same effect on the eye of the ordinary observer, giving such attention to the matter as purchasers usually give.

**3. Patents ⚖═252—Changes in design after desisting from producing exact copy of patented design, and while demand for latter was greatest invites close scrutiny.**

That defendant in patent infringement suit made changes in its design, after desisting from

producing exact copy of patented design, and while trade demand for latter was at its height, invites close scrutiny of claim of noninfringement.

**4. Patents ⊙180—Patent not describing design in writing is limited substantially to pattern shown in drawing.**

Patent containing no written description of patented design must be construed as limited substantially to the pattern shown in patentee's drawing.

**5. Patents ⊙252—Servile imitation is not required to infringe even design patent without written description.**

Servile imitation is not required for infringement even of a design patent without written description.

**6. Patents ⊙252—Changes producing substantially different effect on eye than patented design will avoid infringement.**

If alleged infringer's changes result in producing a substantially different effect on the eye than patented design, so that two patterns are reasonably distinguishable, infringement will be avoided.

**7. Patents ⊙180—Patented design, combining old lines and conventionalized figures into novel pattern, as for lace, should receive no broad range of equivalents.**

Design gaining patentability from combining old lines and conventionalized figures into novel pattern for such an article as lace, new patterns of which are constantly brought out, and may consist of almost infinite variations on given pattern, should receive no broad range of equivalents.

**8. Patents ⊙328—Design patent No. 59,923, for lace pattern with large central 16-rayed figure and open meshed center held not infringed by 8-rayed figure with petals of scimiter shape and small, closely woven center.**

Design patent, No. 59,923, for lace pattern, featured by large central figure with 16 rays or petals and open meshed center or hub, and referred to by trade as "sunflower" pattern, *held* not infringed by 8-rayed figure, with petals of scimiter shape and small and closely woven center, in absence of disinterested testimony that ordinary buyers have mistaken, or are likely to mistake, one for the other.

**9. Patents ⊙328—Design patent, No. 59,923, for lace pattern, held not shown infringed by fact that defendants' lace pattern cut into plaintiff's trade.**

That lace pattern of defendants in infringement suit cut into plaintiff's trade *held* not to show infringement of design patent No. 59,923; being as well explainable on theory that defendant offered different and more pleasing article at cheaper price.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the American Fabrics Company against the Richmond Lace Works and another. From a decree of dismissal, on the merits, and adjudging costs to defendants, plaintiff appeals. Affirmed.

Design patent No. 59,923, for a pattern for lace, was issued December 6, 1921, to plaintiff, as assignee of the inventor, H. S. Philips. The bill of complaint in three counts charged defendants with infringement of the patent, with breach of a contract not to infringe the same, and with unfair competition, and prayed for injunction and accounting.

Frederick S. Duncan, of New York City, for appellant.

Berry, Bucknam & Lovejoy, of Boston, Mass., and Henry Warren Beebe, of New York City, for appellees.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge. The District Judge assumed the validity of the patent, but found that the defendants' lace did not infringe the plaintiff's design, and that neither the count on the contract nor the count charging unfair competition was established. A photostatic copy of a sample of plaintiff's lace, exemplifying its patented design, is shown at the end of this opinion. It is known as an all-over pattern, and is suitable for bedspreads, tablecloths, bureau covers, scarves, etc. This design was brought out in the summer of 1921 and immediately met with large commercial success. For the last five months of 1921, plaintiff's sales of this pattern were 63 webs; for 1922, 667 webs; for 1923, 904 webs—the average price being about $100 a web. In 1923 the sales of this design were nearly three times the total sales of all other all-over patterns of the plaintiff. The tribute of imitation was paid by two competitors, including the defendant Richmond Lace Works, which late in 1922 or early in 1923 brought out an exact copy of plaintiff's design in a slightly coarser grade of lace. In March, 1923, however, as a result of protests by the plaintiff, the defendants ceased to market goods resembling the plaintiff's. So, also, did the other infringing competitor.

A few months later the defendant brought out a modified pattern, which is the infringement complained of in the present suit. Defendant obtained a patent on its design March 11, 1924. A photostatic copy of a sample of the alleged infringing lace is also appended to this opinion. Defendants sold 48 webs of it in the last three months of 1923, 198 webs in 1924, and 62 webs in 1925. The plaintiff's sales shrank to 227 webs in 1924, and to 23 webs for the first four months of 1925. The significance of these figures is the

more apparent when it is noted that defendants' webs contain 221 square yards each, while plaintiff's webs contain only 120 square yards each. Plaintiff proved, further, that certain of its customers, who had previously bought lace of its patented design, bought no more after defendants' similar article came out, but thereafter carried defendants' lace on their shelves. Defendants' lace was of a somewhat coarser grade and was cheaper in price.

[1] Plaintiff's design has a large square containing the elements of a circular hub and open mesh circle surrounding the hub, a rayed flowered figure of sixteen rays, a scalloped border surrounding the rayed figure and within a closely woven frame, outlining the square and separated from the similar frame of an adjacent square by a narrow line of open mesh, and a closely woven triangular piece at each corner of the square. When four of these large squares are adjacent to each other, a smaller square is formed by sections of the scalloped border, which surrounds the rayed figures. The triangular pieces of the four adjacent corners form a crude four-pointed star, the thin straight lines of open mesh dividing each of the four rays of the star, and an open meshed circle appearing at its center. All of these individual elements are no doubt old, but they have been combined in a way to form an artistic and unitary pattern, which was obviously very attractive to the purchasing public. The reassembling or regrouping of familiar forms and decorations, if the result be a design of originality and beauty, may constitute a patentable design. Protex Signal Co. v. Feniger (C. C. A.) 11 F.(2d) 43, 46; Graff v. Webster, 195 F. 522 (C. C. A. 2); Steffens v. Steiner, 232 F. 862, 864 (C. C. A. 2). It was apparently novel, for nothing was introduced in the way of prior art which anticipated it. We are disposed to think that to devise so pleasing a design requires sufficient artistic originality to amount to patentable invention; but it is unnecessary to pass finally upon the issue of validity, unless infringement is found.

[2-6] The test of infringement is whether the two designs have substantially the same effect upon the eye—not the eye of an expert, but the eye of the ordinary observer, giving such attention to the matter as purchasers usually give. Gorham Co. v. White, 14 Wall. 511, 20 L. Ed. 731; Borgfeldt v. Weiss, 265 F. 268 (C. C. A. 2). The defendant's patent concededly has all the elements of the plaintiff's design, and in identical arrangement, except that it has reduced the petals of the

central rayed figure from sixteen to eight, changing somewhat their shape, and reducing the size and appearance of the hub at the center of this figure. These changes were made after the defendant had desisted from producing an exact copy, and while the trade demand for plaintiff's design was at its height. Such circumstances invite close scrutiny of the claim of noninfringement. On the other hand, the plaintiff's patent, which contains no written description of his design, must be construed as limited to substantially the pattern shown in his drawing (Ashley v. Tatum Co., 186 F. 339 [C. C. A. 2]), although servile imitation is not required for infringement, even for a design patent without written description (Borgfeldt & Co. v. Weiss, supra; Whiting Mfg. Co. v. Alvin Silver Co., 283 F. 75, 80 [C. C. A. 2]). But if defendants' changes result in producing a substantially different effect upon the eye, so that the two patterns are reasonably distinguishable, infringement will be avoided. Zidell v. Dexter, 262 F. 145 (C. C. A. 9); Whiting Mfg. Co. v. Alvin Silver Co., supra.

[7] The dominant feature of plaintiff's patent is the large, central, rayed figure, having 16 rays or petals and an open meshed center or hub. The trade referred to plaintiff's design as the sunflower pattern. The defendant has substituted an eight-rayed figure with petals of scimiter shape and with a small and closely woven center. It would require a greater stretch of the imagination to consider this figure a conventionalized sunflower. A design which gains its patentability from combining old lines and conventionalized figures into a novel pattern for such an article as lace—a field wherein new patterns are constantly brought out, enjoy ephemeral success, and disappear with the changing whim or taste of the trade, and where possible variations on a given pattern are almost infinite in number—should not, we think, receive any broad range of equivalents.

[8, 9] The District Judge found that the differences are so marked as to foreclose all reasonable chance of confusion in mistaking one design for the other. No evidence of confusion was presented. Plaintiff's designer testified that experienced lace buyers would make no such mistake, though he thought "some lace buyers will be foolish enough to accept one for the other." From our own inspection, we should say that the general appearance of the two patterns is sufficiently different, so that no reasonable observer, giving such attention as purchasers usually do, would be deceived; and, in the absence of any disinterested testimony that ordinary

buyers have made mistakes or are likely to, we agree with the court below that infringement was not proved. It is true that defendant's pattern cut into plaintiff's trade, but that is as well explainable upon the theory that defendant offered a different and more pleasing article at a cheaper price as upon the theory of infringement.

We agree also with the District Court's rulings as to the counts relating to the alleged contract and unfair competition.

The decree is therefore affirmed.