**SCOVILL MFG. CO. v. UNITED STATES ELECTRIC MFG. CORPORATION.**

District Court, S. D. New York.
Jan. 24, 1940.

Frederic P. Warfield, of New York City, and Francis T. Reeves, of Waterbury, Conn., of counsel, for plaintiff.

Morris Kirschstein, of New York City, for defendant.

WOOLSEY, District Judge.

My judgment in this cause, for the reasons hereinafter stated, is—

1. That the single claim of each of the three design patents, namely, Tompkins No. 99,316, No. 99,336 and No. 101,800, and Claims Nos. 1, 5, 6, 9, 11, 13 and 14 of the mechanical patent, Tompkins No. 2,097,222, are invalid for lack of invention.

2. That the plaintiff has not any locus standi to claim infringement of the trademark "Streamlite", No. 344,408.

3. That the defendant was guilty of infringement of the trademark "Zephyrlite", No. 342,367, and plaintiff is entitled to the relief hereinafter prescribed in respect of such an infringement.

4. That there is not any basis for the plaintiff's claim of unfair competition.

5. There will not be any costs or disbursements allowed to either party except such costs and disbursements as may be involved in the reference hereinafter ordered in respect of the trademark "Zephyrlite".

I. This suit involves a controversy between a Connecticut corporation and a New York corporation concerning patents and trademarks and includes a count for unfair competition.

My subject matter jurisdiction is based in part on the fact that this is a cause arising under the Patent Law and the Trademark Law, cf. Title 28 United States Code, Section 41(7), 28 U.S.C.A. § 41(7), and in part on diversity of citizenship in a controversy involving more than the required statutory amount or value. Title 28 United States Code, Section 41(1), 28 U.S.C.A. § 41(1).

There is not any question of venue.

There is not any question involved as to the plaintiff's locus standi to maintain this suit except for the reasons hereinafter given in respect of the registered trademark "Streamlite".

II. This suit—in its patent aspect—is founded on certain claims of four unadjudicated patents, namely, the single claim of each of the following Tompkins design patents, No. 99,316, No. 99,336 and No. 101,800; and on Claims Nos. 1, 5, 6, 9, 11, 13 and 14 of the Tompkins mechanical patent No. 2,097,222.

It also contains counts for infringement of two registered trademarks "Zephyrlite", No. 342,367, and "Streamlite", No. 344,408, and a count for unfair competition.

III. For the sake of convenience I give a schedule of the dates of application and issue of each of these patents and trademarks.

| Patents | | Filed | Issued |
|---|---|---|---|
| Tompkins Des. 99,316 | | Feb. 28, 1936 | April 14, 1936 |
| Tompkins Des. 99,336 | | Feb. 28, 1936 | April 14, 1936 |
| Tompkins Des. 101,800 | | Feb. 28, 1936 | Nov. 3, 1936 |
| Tompkins No. 2,097,222 | | May 2, 1936 | Oct. 26, 1937 |
| **Trademarks** | | | |
| "Stream- lite" | T. M. 344,408 | June 23, 1936 | March 23, 1937 |
| "Zephyr- lite" | T. M. 342,367 | Sept. 12, 1936 | Jan. 12, 1937 |

IV. In view of Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, it is now a work of supererogation to write a considered opinion on the facts or law in a nonjury cause or proceeding, for its place will be taken by formal findings of fact and conclusions of law separately stated.

In this proceeding, therefore, I will only refer to such facts as I think explain my decision and give a statement of my conclusions of law thereon.

The facts which I state must be supplemented by other facts to be proposed by the defendant when it submits, in the method hereinafter prescribed, its findings for my approval.

V. During the argument plaintiff's attorney offered to withdraw from my consideration the second and third of the Tompkins design patent, namely, No. 99,336 and No. 101,800.

■ Withdrawal of the claims of a patent as the plaintiff has attempted to do in respect of the two design patents, No. 99,336 and No. 101,800, does not suffice properly to dispose of the situation because a patent is always a claim of monopoly in a trade, and I do not think that the plaintiff who has brought a cause involving a patent to trial, may properly be allowed suddenly to withdraw his claim of infringement, and thus leave the question of validity outstanding, and the threat of future prosecutions for alleged infringement hanging over the trade. Lewis Invisible Stitch Machine Company v. Columbia Blindstitch Machine Mfg. Corp., D.C., 22 F.Supp. 705, 708, 709; Knaust Bros. v. Goldschlag, et al., D.C., 28 F.Supp. 188, 190; and cf. Basevi v. Edward O'Toole Company, D.C., 26 F.Supp. 41, 44, applying the same principle to copyrights.

■ In order, therefore, finally to clean up the matter I hold that the second and third design patents,—Tompkins No. 99,336 and No. 101,800—are invalid for lack of invention over the prior art. E. g. The Sportsman Pilot of July 15, 1934 and July 15, 1935, and the 1909 Catalogue of the Lenox-Belleek Company, the celebrated potters at Trenton, New Jersey,—Defendant's Exhibit "H",—showing a design for a pot or jar marked No. 485-486.

■ VI. So far as the Tompkins mechanical patent, No. 2,097,222, is concerned, the claims relied on, Nos. 1, 5, 6, 9, 11, 13 and 14, are found to be, in my opinion, as I stated at the argument, invalid by reason of lack of invention over the prior art. E. g. Paine's patent, No. 1,398,736, for a hand lamp, granted November 29, 1921; Burgess' patent, No. 1,421,399, for a battery hand lamp, granted July 4, 1922; Shannon's patent, No. 1,922,332, for an electric flash light, granted August 15, 1933; Recker's Patent, No. 1,287,434, for a shade-holder and socket-cover, granted December 10, 1918; Taylor's patent, No. 532,609, for a door knob, granted January 15, 1895; Darling's patent No. 2,049,762 for a portable electric lamp, applied for October 10, 1933, and granted August 4, 1936.

VII. It is noteworthy that the design patents were all applied for on February 28, 1936.

The mechanical patent, No. 2,097,222, was not applied for until May 2, 1939. And, as I have felt throughout the case and as I now find, what was done in respect of the mechanical patent was, that after the plaintiff had got the design that it wanted for the *outside* of its flashlight case, it instructed a competent mechanic to work out what it wanted to put *inside* the case in order to make the shape of the interior mechanism appropriate to the design.

I do not think, therefore, that the mechanical patent exhibited an instance of invention.

The main question now is, and, throughout the trial was, the validity of design patent No. 99,316.

■ VIII. It is now settled in this Circuit, that, like a mechanical patent, a design patent, to be sustained when challenged, must be the product of an inventive act on the part of the designer. Cf. Nat Lewis Purses, Inc. v. Carole Bags, Inc., 2 Cir., 83 F.2d 475, 476, and cases there cited and discussed.

The design in a design patent must, as the statute under which such patents issue requires—Title 35 United States Code, Section 73, 35 U.S.C.A. § 73—be *original* as well as new and ornamental.

It does not suffice that the design is merely new and pleasing enough to catch the eye of the trade to which the design is offered.

It certainly was clearly within the competence of any commercial designer, worthy of his salt, to have devised in early 1936 a so-called "streamlined" flashlight. What was called "streamlining" had become, owing probably to airplanes—cf. The Aero Digest, June 1934, and The Sportsman Pilot of July 15, 1934—wherein it served a functional purpose, a fashion which prevaded the automotive trades, not only in respect of the spotlights—E. g. Design Patent, No. 98,047—the fender lights and the fenders of automobiles, but even—often with, to me at least, a most unpleasing effect—of their bodies. This fashion of "streamlining" extended to objects where it had not any conceivable function, but produced, I will confess, often a pleasantly smooth appearance. E. g. Design patents for a telescope, No. 98,685, for a transit, No. 98,678, for a fountain pen, No. 88,299, and a vast number of desk accessories, an electric light socket, U.S. Patent No. 1,287,-434, door knobs and even handles for faucets. E. g. Modern Plastics, June 1935, pp. 18, 19, Exhibit UU.

It is quite natural for a designer to apply current fashions to the article which

he may be engaged in revamping. That is what happened in the situation out of which this cause arose.

In the instant cause, therefore, I do not find any originality in the design patent of Tompkins, No. 99,316, although it is pleasing, and, so far as flashlights were concerned, was new when it was introduced to the trade in the early part of 1936.

I find, therefore, that the sole claim of the design patent No. 99,316 is invalid for want of invention.

In view of this finding it becomes unnecessary to consider or discuss in detail the defendant's claim of prior invention and reduction to practice of a "streamlined" flash light casing by the defendant's employee Grimsley. It suffices in this connection to state that I was not impressed with the defendant's evidence, and I do not think that the defendant met the heavy burden of proof laid on it in such connection.

IX. If I am wrong about the validity of the Tompkins design patent No. 99,316, the scope of its claim is so very narrow as to be in effect limited almost to a precise copy of the patented design.

Design patent No. 99,316, has not any description or specifications in it, and its sole claim reads (Italics mine)—

"I Claim:

"The ornamental design for a flashlight casing *as shown.*"

On the page opposite the claim is an illustration of the design which is so claimed. This the plaintiff claims as its basic design for flashlights.

As the Circuit Court of Appeals for this Circuit has said in a comparatively recent case, American Fabrics Co. v. Richmond Lace Works, et al., 2 Cir., 24 F.2d 365, at page 367—"* * * the plaintiff's patent, which contains no written description of his design, must be construed as limited to substantially the pattern shown in his drawing (Ashley v. Tatum Co., 186 F. 339 (C.C.A.2), although servile imitation is not required for infringement, even for a design patent without written description (Borgfeldt & Co. v. Weiss, supra, [265 F. 268 (C.C.A.2)]; Whiting Mfg. Co. v. Alvin Silver Co., 283 F. 75, 80 (C. C.A.2)). But if defendants' changes result in producing a substantially different effect upon the eye, so that the two patterns are reasonably distinguishable, infringement will be avoided. Zidell v. Dexter,

262 F. 145 (C.C.A.9); Whiting Mfg. Co. v. Alvin Silver Co., supra [283 F. 75, 80 (C.C.A.2)]." Cf. also In re Taylor, Cust. & Pat.App., 39 F.2d 725.

It follows from this statement of the law applicable to a claim of this kind, that the claim of the plaintiff's patent has a very narrow scope, and, I find, leaves the variances in form or surface ornamentation, such as the defendent's allegedly infringing flashlights, outside the ambit of the claim.

There is another consideration in regard to the scope of the plaintiff's claim. This is that by its acts the plaintiff has indicated how narrow it thinks the scope of its claim to be. For since securing the design patent No. 99,316, it has taken out, on later applications of its employees, other design patents, which have been put in evidence as defendant's Exhibit "OO", and which throw a strong ex post facto illumination on what the plaintiff really thought it had secured by its first design patent No. 99,316, because they show that it was claiming as inventions patentable over No. 99,316 slight variants, no greater than the defendant's alleged infringements, from the design therein shown.

X. In respect of the trademark "Streamlite", there are several questions herein involved.

The first question is whether the word "Streamlite" is merely a descriptive word as applied to flashlights or whether it is sufficiently fanciful or arbitrary to be properly registered as a trademark therefor.

I rule that, although the question is perhaps close, "Streamlite" is a sufficiently fanciful and arbitrary word to be a good trademark for a flashlight.

Of course, there is no question but that the defendant's infringing mark "Stream-o-lite" would infringe "Streamlite" if the plaintiff is in the position to maintain suit as registered owner of the trademark "Streamlite" under the circumstances here shown.

It is common ground that the plaintiff allowed Sears Roebuck & Company, to whom it sold its so-called "streamlined" flashlights, to use exclusively the word "Streamlite" in connection with Sears Roebuck & Company's own trademark "Lightmaster".

It is also common ground that the word "Streamlite" was never used by the plain-

tiff as a mark for any goods which it sold at retail.

Consequently, we have a case where the plaintiff in order to make sales to a mail order house—Sears Roebuck & Company—turned over to them its trademark "Streamlite", and, in effect, farmed it out to Sears Roebuck & Company for the latter's use as a part of the goods which it was selling to them.

As Judge A. N. Hand said in Industrial Rayon Corporation v. Dutchess Underwear Corporation, 2 Cir., 92 F.2d 33, at page 35 (Italics mine):

"The question in each case is not whether the mark has been registered, or even whether it has at one time been used by the person seeking protection, but whether, as applied to a particular line of goods, it signifies the source. * * * In each the critical question is whether, *under existing conditions,* the mark signifies that the party claiming protection is the source of the merchandise."

In the instant cause I do not think, in view of the fact that Sears Roebuck & Company only have used the trademark "Streamlite", that the plaintiff has now any locus standi to maintain this suit in respect thereof.

But the plaintiff makes a further contention, namely, that Mr. Hyman, who was president of the defendant and who in fact was the defendant, because it was a one man company, knew, as I find, that the trademark "Streamlite" was the plaintiff's mark and that, consequently, the defendant is liable in this suit for the use of the obviously infringing trademark of "Stream-o-lite".

I do not agree.

It is perfectly clear, of course, that the plaintiff's trademark "Streamlite" would not be good as against the public because Sears Roebuck & Company was the exclusive user thereof. But even as against the defendant, to whom Hyman's knowledge is imputable, the plaintiff has at most what I might perhaps express as an injuria absque damno et absque aequitate.

XI. "Zephyrlite", the other trademark involved herein, is concededly a good trademark for flashlights, and was certainly infringed by the defendant's sale of flashlights marked "Zep-o-lite" and in the circulars issued by defendant and used by it, as I find, with Mr. Hyman's knowl-

edge notably at an Automotive Accessory Show in Chicago on February 13-17, 1937.

The question here is what relief I should grant to the plaintiff.

The defendant's attorney says in his brief that he will consent to an injunction against the defendant. But the defendant has long ago discontinued the use of its "Zep-o-lite" trademark, and now uses "Rocketlite", and as there is no threat to resume the use of "Zep-o-lite", I do not think that I should grant an injunction.

However, in view of the new Rules of Civil Procedure for the District Courts, I do not think that, even if I cannot grant an injunction under the circumstances herein shown, I am precluded from granting an accounting in respect of any damages caused to the plaintiff from the defendant's infringement of the trademark "Zephyrlite", or any profits made by the defendant therefrom.

The only suggestion made by the defendant's counsel is that owing to cases such as Root v. Railway Co., 105 U.S. 189, 215, 26 L.Ed. 975; Mitchell v. Dowell, 105 U.S. 430, 432, 26 L.Ed. 1142, and many cases which have followed them, if I have no ground for giving an injunction, my jurisdiction for granting an accounting and damages must fail, and that I must dismiss the count in respect of the "Zephyrlite" trademark without prejudice, and thus open up the vista of a new trial of this already thoroughly tried issue.

Certainly this is not wise judicial administration, for, as I have oftentimes had occasion to observe, when it is jurisdictionally possible a court should not allow two causes to spring up where at first there was but one.

The question, therefore, is whether, having exhausted the possibility of an equitable remedy, it is jurisdictionally possible, with the new Rules in force, for me to avoid dismissing the claim in respect of "Zephyrlite" without prejudice.

I think it is, for the following reasons:

The new Rules of Civil Procedure provide in Rule 86 that they shall govern not only all proceedings in actions brought after they take effect, but also (Italics mine) "all *further proceedings,* in actions then pending, except to the extent that in the opinion of the court their application in a particular action pending when the rules take effect *would not be feasible or*

*would work injustice,* in which event the former procedure applies."

The new Rules, by Rule 2, have abolished the several forms of action and substituted therefor only "one form of action to be known as 'civil action'".

Rule 38 provides in respect of the right to trial by jury as follows (Italics mine):

"(a) Right Preserved. The right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate.

"(b) Demand. Any party may demand a trial by jury of any issue *triable of right by a jury* by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue. Such demand may be indorsed upon a pleading of the party."

The present cause was commenced and the answer—the last pleading herein—was filed before the new Rules took effect, and, therefore, the defendant could not have availed itself of Rule 38 from which I have just quoted.

But this suit was originally brought in equity—a category of causes abolished by the new Rules—and an accounting for damages and profits is prayed—after the new Rules have become effective—as an incidental remedy in a "civil action."

It seems to me, therefore, that in view of Rule 86, it would be sticking in the bark to say that in a civil action this Court must because it cannot grant an injunction, lose jurisdiction to grant an accounting for damages and profits merely for the reason that this cause had been at issue before the new Rules of Civil Procedure went into effect and had been tried upwards of one year thereafter.

Under these circumstances, it seems to me that to give a reference for an accounting for profits and damages would not only be feasible, but would not work injustice to the defendant and, therefore, would be within the letter of Rule 86, and, if not perhaps within the letter of Rule 38, at least within its spirit. For it is an assumption contrary to fact that if this cause in precisely this form had been brought *after* the Rules of Civil Procedure went into effect, there would have been any claim by the defendant for a jury trial of such minor residual issues therein

as an accounting in respect of a trademark infringement.

I think, therefore, that in respect of the trademark "Zephyrlite" there should be a reference for an accounting for such damages as defendant may have caused to the plaintiff by the infringement thereof, and such profits as the defendant may have made by such infringement.

■ XII. The count in unfair competition is not maintainable for the following reasons:

I have held design patent No. 99,316 invalid for want of invention and the defendant is thus set free from the monopoly thereof and may make "streamline" flashlights like the plaintiff's. Cf. Kellogg Co. v. National Biscuit Company, 305 U.S. 111, 120, 59 S.Ct. 109, 83 L.Ed. 73.

Due to the sale by Sears Roebuck & Company of "streamlined" flashlights purchased from the plaintiff without any reference whatever thereon to the plaintiff, there is not any ground for holding that "streamlined" flashlights are in any way exclusively associated with the plaintiff or are known as its goods—indeed, such an assumption is wholly negatived by plaintiff's own case.

I find, therefore, that there is not any relief on the ground of unfair competition to which the plaintiff is entitled. It must, accordingly, be confined to the relief which I have already given it in respect of the "Zephyrlite" trademark.

■ XIII. Hyman, who is president and in control of the defendant company, did not make a good impression on me. I have decided most of the issues herein for the defendant on principles of law only. In respect of the question of prior invention, the only real question of fact involved, I have ruled against the defendant because I was not satisfied with the evidence adduced by it from Hyman and others.

Consequently, although the defendant has prevailed on all the counts in this cause save one, I shall not allow to it any part of its costs or disbursements.

The plaintiff, however, may have any taxable disbursements to which it may be put, if it decides to go into the accounting before the master for whose appointment I hereinafter provide.

XIV. The attorney for the defendant must prepare, in accordance with this opinion, and submit to me through the

Clerk's office, findings of ultimate facts and conclusions of law as herein indicated, in pursuance of the requirements of Rule 52(a) of the Rules of Civil Procedure.

I do not want any details of evidence submitted as findings of ultimate facts. But, as above indicated, there should be findings of fact additional to those herein mentioned in order that a full record of the situation now facing the plaintiff may be made and the juridical result of this carefully tried cause preserved.

All proposed findings of fact and conclusions of law submitted to me must be *typed in triple spacing* so that I may conveniently correct them if I wish to do so.

The attorney for the defendant must give ten days' notice of the submission of his proposed findings of fact and conclusions of law to the attorney for the plaintiff.

In submitting his findings of fact, the attorney for the defendant must also submit under a *separate cover bound at the left side* a short memorandum indicating the pages of the evidence on which each finding proposed by him is based. It is not a very difficult matter to prepare such a memorandum and thus make it possible for me to look up any question of fact about which I may be in doubt. All that is necessary in the memorandum is to give the number of the finding, and to follow it with the number or numbers of the supporting pages or exhibits in the record of the trial.

The attorney for the plaintiff, if he is so advised, may on the return day of such notice of submission of findings of fact and conclusions of law by the defendant's attorney, serve on the defendant's attorney and submit to me criticisms of the findings of fact proposed by him.

As under Rule 52(a) only findings of fact and conclusions of law which I sign will be filed as part of the record herein, I suggest this course for the plaintiff's attorney because counter findings will not avail him in any respect. He must take his objections, if any, to my findings of fact and conclusions of law by way of appropriate assignments of error on any appeal which he may take.

XV. After the findings of fact and conclusions of law have been signed by me the defendant's attorney must submit a judgment dismissing all the claims herein except the claim in respect of the in-fringement, which I have found, of the "Zephyrlite" trademark, and as to that must provide in the judgment that there be a reference to a master for an accounting for such damages as the defendant may have caused to the plaintiff by the infringment of the trademark "Zephyrlite", and such profits as the defendant may have made by such infringement. The judgment must also provide that the fees and disbursements of the master on such reference shall be taxable against the defendant.