**FORMAN v. AMERICAN EXP. CO. et al.**

**Civ. A. No. 5–79.**

District Court, S. D. New York.

Feb. 21, 1941.

George C. Dix, of New York City, for plaintiff.

Carter, Ledyard & Milburn, of New York City (Walter H. Free and Rush Taggart, both of New York City, of counsel), for defendants.

BYERS, District Judge.

The plaintiff seeks an injunction and damages for the alleged infringement by the defendants of his design patent No. 111248 granted September 13, 1938. It is entitled "Design for a Propelled Vehicle", and the claim is for "The ornamental design for a propelled vehicle, as shown".

The drawings depict a vehicle containing one cross-seat to accommodate presumably two passengers in front, and directly behind, a smaller seat for a third person. The drawings further disclose that the seats are contained in a streamlined body of graceful and attractive appearance, which moves upon three wheels, two in front and one in the rear.

The patentee testified that the four essentials of his design are:

(1) A seat for passengers who would have an unobstructed view by reason of the position of the rear (driver) seat which has been described (the idea had its origin in the arrangement of the old-fashioned horse-drawn hansom cab).

(2) Three-wheel suspension, the steering being done by the third or rear wheel which could be easily maneuvered by the occupant of the rear seat.

(3) Electric motivation power. This is not shown in the patent.

(4) The vehicle is attractive in appearance; that is to say, so-called streamlining has been employed.

The plaintiff sought to procure the approval of his design for vehicles to be used by visitors at the New York World's Fair, who would view all that was exterior to the various buildings, from wheel chairs propelled by power.

His design was not accepted by the defendant American Express Concessions, Inc., the corporate concessionaire chosen by the authorities of the Fair to operate these vehicles for hire.

That defendant, which is a subsidiary of the American Express Company, the co-defendant, caused vehicles of this general character to be designed and built for it, and the design actually employed is illustrated by four photographs attached to a stipulation (defendants' exhibit A, in evidence).

The issues are validity and infringement, and it will be convenient to examine the latter at once, in the light of the teachings of prior cases; namely:

The plaintiff's design is restricted to the disclosure of the drawings, since there is no written specification. Ashley v. Samuel C. Tatum Co., 2 Cir., 186 F. 339; American Fabrics Co. v. Richmond Lace Works, 2 Cir., 24 F.2d 365, at page 367; Scovill Mfg. Co. v. United States Electric Mfg. Corporation, D.C., 31 F.Supp. 115, at page 119.

Every element in the design must be deemed to be essential. Dixie-Vortex Co. v. Lily-Tulip Cup Corporation, 2 Cir., 95 F.2d 461, at page 467.

The question for decision is whether the two designs present the same effect to the eye of the ordinary observer. Gorham Mfg. Co. v. White, 14 Wall. 511, 20 L. Ed. 731; American Fabrics Co. v. Richmond Lace Works, supra, and many other cases to the same effect.

Within the foregoing, the present issue of infringement is thought to invite but brief discussion.

The vehicle used by defendant resembles that described in the plaintiff's patent in that it employs a three-wheel suspension, the seat for the passengers being in front and that for the operator directly behind. There the resemblance ends.

The defendants' device is not streamlined, and the only suggestion to the contrary is in the conformation of the sides, which are vertically flat; the greatest vertical dimension is at about the passenger seat; there is a tapering of the top line toward the rear of the vehicle, and the least vertical dimension is about half of the greatest. The sides terminate in the form of a parabola at both ends.

The rear of the body does not taper to a point, but is of substantial width, the narrowest part being about midway between the top and the bottom of the rear section, and at the bottom there is a flare outward, as will be observed from the photographs.

A convenient definition of "streamline" will be found in the Columbia Encyclopedia (1940), as follows: "Streamline, in the planning of bodies of airplanes, boats, automobiles, and railroad cars, a design which will result in uninterrupted flow of the air or water about the body, instead of an eddying or turbulent motion. A streamlined body offers the least possible resistance to the fluid, and permits the current which it breaks simply to reunite in its wake, without the retarding or dragging eddies and turbulence created by partial vacuum in the wake of a non-streamlined body. The streamline design is typically a long ellipse, tapering to a point; it is illustrated in the cross-section of an airplane wing, and in a bird's and a fish's body."

Such in general is the portrayal of the plaintiff's design, in contrast to that revealed in the defendants' vehicles, which, as depicted in the photographs, appear to be sturdy rather than graceful in contour, and utilitarian in concept, assuming that in the driver's section of the vehicles any useful purpose was served by providing an enclosed body; they are narrower at the rear than in the front and the sides are curved laterally to accommodate that construction, but the width of the extreme rear will be seen to be well in excess of one-half of the width at the front, and consequently the purpose of the streamline design, according to the above definition, could not have been realized according to the defendants' design, even if it were desirable in a wheel chair which would not be propelled at a speed much in excess of four miles an hour.

84

In other words, the streamline design was a fanciful thing as applied to this type of vehicle, but it is of the essence of the plaintiff's patent. That design has not been copied by the defendant, nor visibly imitated, and this court so finds.

There are other structural differences which are quite apparent, but it seems unnecessary to recite them.

The defendants' witness Harrison was asked on cross-examination if he had not instructed the architects who made the final design for the defendants' vehicles to avoid copying the plaintiff's design, and he replied in the negative; had his answer been in the affirmative, it would have been necessary to conclude that such instructions had been adhered to with notable success.

In view of the foregoing, it becomes unnecessary to consider the question of validity.

Decree for the defendants with costs. Settle findings in accord with the foregoing.