40 C.C.P.A. (Patents)

**Application of LURELLE GUILD.**

**Patent Appeal No. 5967.**

United States Court of Customs and Patent Appeals.

April 15, 1953.

Rehearing Denied May 29, 1953.

Allen & Allen, Cincinnati, Ohio (Erastus S. Allen, Cincinnati, Ohio, of counsel), for appellant.

E. L. Reynolds, Washington. D. C. (H. S. Miller, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Judges.

COLE, Judge.

The subject matter involved in this appeal relates to a design patent application for a building roof.

In proceedings before the Primary Examiner of the United States Patent Office, the single claim of the application was rejected, three grounds therefor being assigned. The Board of Appeals affirmed the examiner's decision, reversal of the first ground of rejection, however, specifically being manifested.

The claim reads as follows:

"The ornamental design for a building roof substantially as shown and described."

With the consent of the Patent Office, the application drawing has been supplemented on appeal by more accurate reproductions of the design in question and while technically not a part of the record before us, said reproductions will be considered in arriving at the decision of the court.

A clear description of applicant's design is found in the opinion of the Primary Examiner, as follows:

"The subject matter of the instant application relates to a building roof made up of shingles of the type having granules on the surfaces thereof. Said granules are arranged in batches which vary in hue, chroma and value embedded in areas on the surface of the shingles with adjacent areas blended together so that when the shingles are laid on the roof an optical effect of deep shadows below the butts of the shingle units is produced simulating shingles of greater than actual thickness, the blending of adjacent areas of the granules of different hue, chroma and value arranged irregularly depthwise of the roof revealing a non-banding visual appearance laterally of

the roof of gradually deepening color value throughout the entire exposed area of each shingle unit from butt to overlap and the blending of the granules of different hue and chroma in areas laterally of the roof arranged irregularly widthwise in each shingle unit to reveal a non-banding appearance depthwise of the roof, the pattern of distribution of granules of different hue, chroma and value being different in each shingle unit."

It is essential that the terms "hue," "chroma," and "value" (color value), used in the foregoing description, be understood. In this connection, the applicant has stated in his brief that every colored article, exclusive of black and white or intermediates there-between, has three qualities. Hue commonly means color, i. e., red, green, blue, yellow, or intermediates thereof. Chroma has particular reference to whether the hue is intense, weak, faded, etc. Color value is indicative of the degree of luminosity.

It appears to us that the applicant, by arranging areas of mineral granules on the shingles which vary in hue and chroma, but which gradually deepen in color value from butt to overlap, achieves the non-banding shadow blend roof effect which is claimed to be the essence of the invention. More concretely, the overall concept amounts to this: Constantly change the areas of different hue and chroma laterally of the roof and, at the same time, maintain a constantly changing color value vertically of the roof panel.

In rejecting the application on appeal, the Board of Appeals placed reliance upon the following references: McKay 1,208,595 December 12, 1916; House and Garden page 50 April, 1950.

The McKay reference is a product patent for prepared roofing while the latter publication is pertinent in connection with alleged copyright protection granted the present applicant covering the identical roof design claimed in the instant appeal. Considering now the patent to McKay, the tribunals below predicated their rejection of the appealed claim on the ground that the subject matter thereof was not patentably distinct from that disclosed by the reference. That a product patent, such as the McKay reference, can, if pertinent, be cited as a disclosure to anticipate the design application on appeal is not disputed.

McKay's drawing shows a shingle darker at the lap end which gradually becomes lighter at the butt end. The applicant agrees that the following analysis of the McKay specification, as set forth by the board in its opinion, is correct:

"McKay states that he attains fictitious or illusory shadow-values by the graduated blending or merging of a lighter-colored color-layer into the darker mass of a plastic main layer and that by the coordination of the resultant illusory 'deep-shadow' areas and 'shadow-blends' with the physical elevation and depressions of the prepared roofing surface, he attains the optical illusion of depth of relief which greatly exceeds the physical depth of the material. McKay also states that the two layers may be so blended as to graduate the color of the color coating into the dark appearance of the deep-shadow area in the resultant 'shadow-blend' areas. * * *"

Concededly, McKay suggests a shadow blend giving an artificial appearance of thickness to the shingles. Persistently urging, however, that McKay's idea was completely inoperative to produce anything which resembles the appearance of that inventor's drawing, the applicant, to strengthen such a conclusion, has submitted the affidavit of one Howard Callahan, a man considered to be highly skilled in the art in question. The Callahan affidavit is clear to the effect that following diligent efforts to practice McKay's invention, according to the tenor of the patent disclosure, the affiant was wholly unable to produce any likeness to the patentee's drawing. A specimen piece of roofing allegedly made in accordance with the McKay process was placed in evidence. That it differs in appearance from the drawing of Figure 1 of the McKay patent is quite apparent.

The sum and substance of applicant's position would thus seem to be based on alleged inoperativeness of the McKay disclosure insofar as producing anything having the appearance of what is shown in the drawing of that patent. The applicant believes that "the draftsman made a mistake as to what McKay's roll roofing would look like" and further that "it is purely a chance showing having no basis in the specification." Applicant submits that justification for its conclusion is readily found in McKay's failure to avoid "banding." The applicant insists that it is only by varying the hue, chroma and color value of the granules that "banding" is avoided, and that McKay allegedly fails to achieve this result is, according to applicant, evidence of inoperativeness, regardless of what the reference drawing discloses.

In applying the McKay reference, the Primary Examiner said:

"* * * the drawing disclosure of McKay clearly illustrates a shingle which is darker at the lap end and gradually becomes lighter at the butt end. It would appear that McKay accomplishes the same result as to appearance when his shingles are laid in a finished roof. Applicant, in support of his traversal of this rejection, has submitted a sample roof section alleged to have been made by the process outlined by McKay. It is admitted that it differs in appearance from the roof section shown in the McKay patent, and applicant states in effect that this is an indication that the McKay patent is inoperative and that the showing thereon is merely the Draftsman's notion of how a roof made in accordance with the McKay patent should look and this is not supported by the facts. As designs are based solely on appearance and the McKay drawing disclosure appears to clearly show the identical appearance as presented by applicant's drawing, it is not seen to be material whether McKay's process would produce the shingles shown thereon or not. The fact remains that the showing of McKay is deemed to substantially duplicate applicant's showing and as McKay is old enough to be a publication reference against the instant case, such showing alone is a valid reference."

It is a fundamental principle of patent law that the patentability of a design application is to be tested in the light of its appearance as a whole. Bearing in mind that the law applicable to design patents is not different from that applicable to other patents, the determinative factor relative to the issue of anticipation is founded in identity or substantial similarity of appearances.

Should we accept the McKay reference as sufficient to reject the application before us, that would preclude any need for consideration of the other objection. Obviously, if the applicant has but presented a design sufficiently similar to that of McKay, as evidenced by a comparison of the respective drawings, then the applicant must recognize his efforts as being non-patentable.

In approaching what we consider the controlling and decisive issue, it is well to keep in mind that a patent enjoys a presumption of validity and a party attacking its validity on the ground of inoperativeness must establish his case by a preponderance of proof.

As previously noted, the applicant, in attempting to satisfactorily meet the aforesaid burden of proof, submitted the affidavit of Callahan attesting to the inoperativeness of the McKay process. For obvious reasons, an ex parte affidavit, while not to be lightly disregarded, is seldom acceptable as being *conclusive* of the factual matter stated therein, and, in general, such affidavits are accorded the status of an expression of opinion by an expert in the art. The prime importance of the ex parte affidavit to the applicant seeking to avoid an asserted anticipation must, however, be fully recognized as it is one of the few practical mediums through which the applicant can successfully operate in endeavoring to prove his case. Yet, the law demands close scrutiny of such affidavits, particularly in those instances wherein the affiant is not a disinterested party.

See In re McKenna, 203 F.2d 717, 40 C. C.P.A., Patents, ——, for a more detailed discussion of ex parte affidavits.

■ The tribunals below in discounting the effectiveness of the Callahan affidavit to establish the alleged inoperativeness of the reference patent did so, presumably, only after a sound appraisal of said affidavit. We have carefully reviewed the Callahan affidavit in the course of our study of the case but when viewed in the light of all surrounding circumstances, we must hold that it is not sufficiently convincing.

■ Looking to Figure 1 of the McKay patent, we believe that it adequately expresses the content of that inventor's disclosure. Looking then to the drawing accompanying the application on review, there is practically no difference. Both drawings present shingles which are darker at the lap end and gradually lighten in color at the butt end. This cannot be disputed by anyone looking at the two side by side. Design patents are presumably based on what the application therefor discloses its appearance to be. While, as indicated, the applicant asks that this rule be not applied in this instance because, as evidenced by the proof submitted by him, the McKay process would not actually produce shingles like those shown in the drawings. We agree thoroughly with the examiner and Board of Appeals in rejecting this contention by applicant.

■■ Even assuming that the McKay process is inoperative, as claimed by the applicant, our jurisdictional predecessor, the Court of Appeals for the District of Columbia, in the case of In re Decker, 36 App.D.C. 104, said (headnote): "a patent will not be granted for a product described in prior patents even though the devices for making the product as so described are inoperative." By parallel, this language might easily be applied to the facts of the instant case where, although McKay's process may be inoperative, his conception of the roof design in question was clear and complete, thus indicating lack of invention in the design covered by the appealed claim. See Cohn v. United States Corset Co., 93 U.S. 366, 23 L.Ed. 907; In re Marden, 48 F.2d 428, 18 C.C.P.A., Patents, 1119; In re Crosby, 157 F.2d 198, 34 C.C.P.A., Patents, 701, and authorities cited therein.

This case impresses us as being confined to one decisive issue, and we feel that the Board of Appeals was manifestly correct and cite with approval the following from its opinion:

"* * * It seems to us that McKay does disclose in Figure 1, and in various parts of his specification, a roof design which is substantially the same as appellant's. * * * Furthermore, it seems to us wholly immaterial for the purposes of a design disclosure how the roof design shown in Figure 1 of McKay is produced since it clearly discloses a certain concept which could be put into practice by merely painting or stippling the shingles to look like the design disclosed in the specification and illustrated in Figure 1. It is our opinion that McKay clearly discloses the design shown in appellant's drawing and the Examiner's rejection thereon is affirmed."

For the reasons hereinbefore stated, the decision of the Board of Appeals is affirmed.

Affirmed.