**BACHMANN BROS., INC., Plaintiff,**

v.

**OPTI–RAY, INC., Defendant.**

Civ. A. No. 64–C–261.

United States District Court
E. D. New York.

Aug. 29, 1967.

Ward, Haselton, McElhannon, Orme, Brooks & Fitzpatrick, New York City, Stuart A. White, New York City, of counsel, for plaintiff.

I. Jordan Kunik, New York City, for defendant.

MISHLER, District Judge.

The single claim stated in the complaint alleges that the defendant has infringed upon Design Patent No. 195,-311, which was issued to the plaintiff's assignor, Albert G. McNeill on May 28, 1963. By the terms of the pre-trial order, dated January 6, 1967, the defendant conceded that if the McNeill patent is held to be valid, the company must be found to have infringed upon the design therein. Thus, the only issue tried to the court was the patent's validity.

The figures shown in the patent constitute a design for a pair of spectacles in which the brow bridge and nosepiece are a single line, and are curved in the general configuration of the face at eye level. The lense portions take on the convexity of the frame. The over-all impression one gets is of a simple, cohesive, "swept back" or "wrap around" design. This design is carried out in the temple bars, which follow a straight line until they curve down at the end to conform to the shape of the ear.

The examiner cited the following patents as prior art:

Design Patent

| No. | Inventor | Date |
| --- | --- | --- |
| 116,259 | Roland T. Cook | August 22, 1939 |
| 154,133 | Aurel E. Mangold | June 14, 1949 |
| 183,006 | Edward W. Smith | June 17, 1958 |
| 187,752 | Frank W. Lindblom | April 26, 1960 |

The examiner did not cite, however, the following patents:

| Patent No. | Inventor | Date |
| --- | --- | --- |
| 2,296,634 | George I. Fink | September 22, 1942 |
| 2,513,507 | William C. Moeller | July 4, 1950 |

Nor did he refer to the following British patents:

No. 569,134: filed in the United States on October 16, 1942

No. 602,082: filed in the United States on December 5, 1944

No. 626,488: filed in the United States on September 4, 1945

In addition, the "Orma Sportgoggle" embodied the design of French Patent No. 1,185,637, which was distributed in this country by its manufacturer, La Lunette of Paris, Inc., in a printed publication dated May 1, 1961, more than one year prior to the date on which the application for the McNeill patent was filed, i. e., May 24, 1962.[1]

The McNeill patent is a modification of the Orma design and was intended to give a simpler, less encumbered appearance.[2] While the size, shape and curvature of the Orma lens are substantially the same as in the McNeill design, the former does have some other features. For example, the Orma goggle has a separate nosepiece made of clear plastic which is easily distinguished from its gold metal frame. The nosepiece in the plaintiff's sunglasses, however, is an integrated part of a black plastic frame. But the real difference in design between the sunglasses is found in the frames. The frame on the Orma sunglass consists of a narrow, gold-colored metal strip

1. 35 U.S.C. § 102, provides, in part, as follows:

A person shall be entitled to a patent unless—

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States * * *

2. Richard Simpson Redles, employed by the plaintiff as its director of research and marketing of merchandise, testified as to how the Orma design came to his attention, and how the McNeill design came into being (Tr., pp. 26–30).

Q. When you were traveling in the State of Florida, did you discover any new designs for sunglasses?
A. Yes, I did.
I visited with a wholesaler in Florida and at that time noticed a sunglass which has been identified as the ORMA sunglass, and felt that it offered an awful lot of difference than other sunglasses and had a lot of appearance value.
At that time I purchased a pair and returned to Philadelphia with them.
Q. When you say the "ORMA sunglass," do you mean the ORMA sportgoggle, Defendant's Exhibit P?
A. That's correct.
Q. How did the ORMA sportgoggle differ in appearance from the conventional sunglass of that time?

A. The conventional sunglass at that time was a flat front. It did not have a curvature which extended beyond the eye vision and to the side of the face.
*     *     *     *     *
Q. And is the ORMA sportgoggle which you testified you found in Florida similar in appearance to the sportgoggle illustrated in Defendant's Exhibit M?
A. Yes, it is.
Q. What disposition did you make of the ORMA sportgoggle which you purchased in Florida when you returned to Philadelphia?
A. I had a meeting with our designer, Mr. Albert McNeill, and at that time asked him to come up with some ideas that would encompass a new, more simplified and of a superior design value in the sunglass.
Q. You mentioned Albert J. McNeill. Is this the Albert J. McNeill who is the patentee of the patent here in suit?
A. Yes, he is.
Q. What is Mr. McNeill's capacity with Bachmann Bros.?
A. He is our designer.
*     *     *     *     *
Q. You testified, I believe, that you handed Mr. McNeill the glass.
Did Mr. McNeill make any suggestion with respect to designs for a new sunglass?
A. Yes.
Mr. McNeill developed several sketches, which again we tried to remove the exact image of the ORMA glass.
We wanted something that again was simple, was new and had a complete design look of freshness about it.

which is mounted onto the actual lenses, conforming to their rounded shape. The temple portion is shaped slightly differently, at one point being fairly flat, and then appearing as a thin metal tubing as the temple bar curves to completely encircle the ear. Here, again, the plaintiff's sunglasses differ somewhat from the Orma design. See, Plaintiff's Exhibit No. 4. Nevertheless, the sunglasses give the same structural appearance and the outlines of the front view of both are similar in design. The major alteration of the Orma design that Mr. McNeill effected in order to attain the simpler lines suggested by Mr. Redles (see footnote No. 2) is to be found along the top of the sunglasses. In the McNeill design, the brow bridge is on the top edge of the lenses, while the brow bridge is mounted onto the lenses themselves so that each lens projects slightly above the bridge.[3]

*Applicable Law*

■ The statutory protection for design patents is found in 35 U.S.C. § 171 (1964),[4] which, by its express terms, makes the test of the patentability of a design the same as that provided for utility patents. See, 35 U.S.C. § 103 (1964); Knickerbocker Plastic Co. v. Allied Molding Corp., 184 F.2d 652, 654 (2d Cir. 1950). Thus, a design will be denied patent protection

if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter

pertains. * * * 35 U.S.C. § 103 (1964).

■ Since the claim in the McNeill patent is for the "ornamental design for a pair of spectacles as shown and described", Plaintiff's Exhibit No. 1, the design is limited to the form disclosed in the drawing. Application of Lurelle Guild, 40 C.C.P.A. Patents 996, 204 F.2d 700, 704 (1953); American Fabrics Co. v. Richmond Lace Works, 24 F.2d 365, 367 (2d Cir. 1928).

■ The statutory protection afforded under the patent laws is reserved for invention. In other words, the claim must be creative; it must be the product of more than the ordinary skill of a designer " * * * in the art to which said subject matter pertains." 35 U.S.C. § 103 (1964). The skill of a designer who adapts the prior art does not entitle him to a patent. Blisscraft of Hollywood v. United Plastics Co., 294 F.2d 694, 696 (2d Cir. 1961). The ingenuity of the imitator is no substitute for the creativity of the inventor. General Time Instrs. Corp. v. United States Time Corp., 165 F.2d 853 (2d Cir.), cert. denied, 334 U.S. 846, 68 S.Ct. 1515, 92 L.Ed. 1770 (1948).

■ Nevertheless, the regrouping of familiar forms may constitute a patentable design if in its over-all appearance it was not obvious to a designer of ordinary skill. American Fabrics Co. v. Richmond Lace Works, supra. The mere fact that " * * * it can be distinguished in appearance from prior designs", however, is insufficient. Berlinger v. Busch Jewelry Co., 48 F.2d 812,

3. Plaintiff's expert testified as follows as to plaintiff's Exhibits Nos. 4 (patented device) and 5 (accused devise):
The front view is the important thing in point of sale where they are carded or displayed or folded and displayed, most of the impact and visual importance is this view.
As far as I can see, there is no difference unless there is a little difference in the color of the lens. There may or may not be.
In our design jargon, they are a Chinese copy. Tr. p. 80, ll. 11–19.

4. 35 U.S.C. § 171 (1964) provides as follows:
§ 171. *Patents for designs*
Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title.
The provisions of this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided.

813 (2d Cir. 1931). The fact that something is "new" or "different" does not make it an invention. A design must be creative to be patentable.

■ It has been observed that " * * the lack of definite standards of comparison makes it difficult to characterize the inventive features necessary to a valid design patent except in terms of broad generalization." Krem-Ko Co. v. R. G. Miller & Sons, 68 F.2d 872, 873 (2d Cir. 1934). Nevertheless, a showing that a design is " * * * new and pleasing enough to catch the trade * * *," Neufeld-Furst & Co. v. Jay-Day Frocks, Inc., 112 F.2d 715, 716 (2d Cir. 1940), is not sufficient to establish the invention of a " * * * new, original and ornamental design * * *." 35 U.S.C. § 171 (1964). See, Klein v. Burns Mfg. Co., 245 F.2d 269, 270 (2d Cir. 1957) (per curiam); A. C. Gilbert Co. v. Shemitz, 45 F.2d 98, 99 (2d Cir. 1930).

The plaintiff's expert described the McNeill design as " * * * a very simple cohesive design without ornamentation, almost classic in its simplicity, a simple single form." Tr. p. 83, 11. 11–14. He also testified that the McNeill sunglasses were of a Monocoque type construction, while the Orma design was of architectonic type construction, i. e., an integration of many pieces. Tr. p. 103, 11. 11–17.

When one considers the outlines of the respective designs,[5] differences in color and materials are eliminated. It then becomes apparent that the McNeill design is but a slight modification of the overall design of the Orma sunglasses. The court finds that the modification was such that it would have been obvious to a designer of sunglasses at the time the modification was made.

The McNeill design was also anticipated by Cook (116,259 August 22, 1939). The convex design of the lens, the single cohesive frame and the shape of the temple bars, are fully disclosed by Cook.

■ The patent is invalid. The clerk is directed to enter judgment dismissing the complaint.

5. The drawings compared with the McNeill design are the Orma design (Defendant's Exhibit No. M) and the Lessac patent, No. 1,185,637 (French). The parties have agreed that the Orma design is based upon the Lessac Patent.